[Civ. No. 36439. Second Dist., Div. One. Nov. 19, 1970.]

JAMES W. HIEMSTRA, Plaintiff and Appellant, v.
WILLIAM T. HUSTON et al., Defendants and Respondents.

## COUNSEL

Burg & Fink and Louis Burg for Plaintiff and Appellant.

Kirtland & Packard and Harold J. Hunter, Jr., for Defendants and Respondents.

## OPINION

**LILLIE, J.**—In his third amended complaint for negligence and malpractice against a firm of attorneys and a bank, plaintiff, son of the decedent, alleged that on January 24, 1968, Sevigne Hiemstra, decedent's wife, visited the bank and was introduced to its trust officer, Frederick W. Hearn, a member of defendant law firm, whom she informed that her husband was seriously ill; that defendants knew, or in the exercise of reasonable diligence should have known, that decedent had engaged an attorney to prepare his last will; that on January 31, 1968, without notice to decedent or his attorney, defendants without knowledge of his physical or mental condition, the amount or nature of his properties, or his true dispositive testamentary wishes or intent, family situation or prior wills, gifts, insurance or trusts, negligently and without instructions from him prepared his last will and testament; that on February 2, 1968, Sevigne and defendants went to the hospital and wrongfully induced and prevailed upon decedent to execute the will which designated Sevigne as beneficiary of his entire estate with the exception of specific bequests to him (plaintiff), blood relatives and a charity; that decedent's true testamentary intent was to leave Sevigne his home, $20,000 and $400 monthly income from a trust, and to leave him, as remainderman of said trust, one-half of the corpus; that decedent died on February 15, 1968, leaving a $500,000 estate, and the trial of his (plaintiff's) contest of said will is pending; that as a direct and proximate cause of defendants' conduct his bequest was materially reduced and he was deprived of the bequest he would have had, all to his damage in the sum of $400,000. Plaintiff also sought exemplary and punitive damages in the sum of $1,500,000.

Demurrer was interposed and sustained; the minute order shows that "[t]he complaint does not plead with particularity required" and the court gave plaintiff 20 days within which to plead. Plaintiff not having amended within the 20-day period, an order of dismissal was entered under the provisions of section 581, subdivision 3, Code of Civil Procedure. Plaintiff appeals from said order.

██ The trial court properly held that plaintiff failed to state a cause of action. ██ "When a plaintiff is given the opportunity to amend and elects not to do so, the presumption is that he has stated as strong a case as he can. In such a situation, strict construction is required. (*Lucas* v. *Roberts,* 201 Cal.App.2d 365, 366 [20 Cal.Rptr. 23]; *Melikian* v. *Truck Ins. Exchange,* 133 Cal.App.2d 113, 115 [283 P.2d 269]; *Curci* v. *Palo Verde Irrigation Dist.,* 69 Cal.App.2d 583, 585 [159 P.2d 674].) When the circumstances are such as in the case at bench, if the complaint is objectionable on any ground, the judgment of dismissal must be affirmed.

(*Totten* v. *Underwriters at Lloyd's London,* 176 Cal.App.2d 440, 442 [1 Cal.Rptr. 520].)" (*Vaughn* v. *Certified Life Ins. Co.,* 238 Cal.App.2d 177, 180 [47 Cal.Rptr. 619].)

Appellant argues that a cause of action in negligence has been properly pleaded under the case of *Heyer* v. *Flaig,* 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161], and several earlier cases which hold that "[o]ut of the agreement to provide legal services to a client, the prospective testator, arises the duty to act with due care as to the interests of the intended beneficiary." (*Heyer* v. *Flaig, supra,* 70 Cal.2d 223, 229; *Lucas* v. *Hamm,* 56 Cal.2d 583, 590 [15 Cal.Rptr. 821, 364 P.2d 685]; *Biakanja* v. *Irving,* 49 Cal.2d 647, 649-650 [320 P.2d 16, 65 A.L.R.2d 1358].) ▮ However, unlike the foregoing three cases in which, through an alleged failure of defendant to use care in drafting the will, a legal defect resulted therein which defeated in whole or in part the stated intent of the testator in and the very objective of the will, the thrust of plaintiff's cause herein is negligence consisting of drafting a will without instructions from the testator and in ignorance of his true testamentary wishes.

Nothing in the third amended complaint points to any claim that defendants' alleged negligence resulted in any legal deficiency in the will which would prevent its probate and frustrate the testator's expressed intent therein to leave the bulk of his estate to his widow. Nor therein has plaintiff asserted either as a conclusion or by allegation of ultimate facts that the will failed to reflect the testator's true dispositive and testamentary intent or desires *at the time it was approved and executed* by him and that it did not contain exactly what he wanted it to contain and dispose of his estate in the manner in which the testator then intended. Further plaintiff has failed to allege that the will was not validly executed; that the testator was not possessed of testamentary capacity or that the will was executed as the result of undue influence. ▮ While the pleading asserts the testator was confined to the hospital with a serious illness and died 13 days after execution of the document, illness alone does not cast doubt on his testamentary capacity. " 'A testator is of sound and disposing mind and memory if, at the time of making his will, he has sufficient mental capacity to be able to understand the nature of the act he is doing, and to understand and recollect the nature and situation of his property and to remember, and understand his relations to, the persons who have claims upon his bounty and whose interests are affected by the provisions of the instrument.' (*Estate of Smith, supra* [200 Cal. 152 (252 P. 325)]; *Estate of Arnold, supra,* p. 586 [16 Cal.2d 573 (107 P.2d 25)]; *Estate of Sexton,* 199 Cal. 759, 768 [251 P. 778].)" (*Estate of Lingenfelter,* 38 Cal.2d 571, 582 [241 P.2d 990].) ▮ Testamentary capacity is always pre-

sumed to exist unless the contrary is established. (*Estate of Locknane,* 208 Cal.App.2d 505, 510 [25 Cal.Rptr. 292].) While in his reply brief appellant states he "does not claim nor [*sic*] contend a lack of testamentary capacity or undue influence," nevertheless he has made what appears to us to be an attempt to plead both. He alleged that Sevigne and defendants met in the hospital room and "carelessly, negligently [*sic*] and wrongfully induced and prevailed upon said testator . . . to execute the aforesaid Last Will and Testament." If this was originally intended as an allegation of undue influence it amounts to no more than a bare legal conclusion. (*Estate of Marler,* 148 Cal.App.2d 30, 37 [306 P.2d 105].) Also briefly alleged is the conclusion that the true testamentary intent of the testator was to leave to plaintiff "as remainderman of said trust, one-half of the corpus of the said trust." While respondents argue that this allegation is at odds with those in three prior verified complaints—that it was intended that plaintiff would be an "absolute legatee"—and he "has done exactly what is prohibited under the rules of verified pleadings—he has literally 'blown hot and cold' with respect to the same allegation of entitlement," the prior pleadings are not before us and there is no more than their argument in their memorandum of points and authorities attached to demurrer to third amended complaint to support their claim.

Thus for the purpose of this appeal and under the third amended complaint we are confronted with a will validly and voluntarily executed by a testator possessed of testamentary capacity, the terms of which comport with his dispositive and testamentary intent and desires at the time he approved and signed it; regardless of plaintiff's allegations of negligence, the real issue under his pleading is whether it was actionable negligence for Mr. Hearn to *draft* such will "without instruction" from the testator and "in ignorance" of his true testamentary wishes to leave less to his widow and substantially more to plaintiff.

*Heyer* v. *Flaig,* 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161], is the most recent of three cases upon which appellant relies. The earliest, *Biakanja* v. *Irving,* 49 Cal.2d 647 [320 P.2d 16, 65 A.L.R.2d 1358], an appeal from a judgment on the merits, involves an action for negligence brought by the testator's brother. The will bequeathed to him all of the testator's estate; it was denied probate because of a legal defect—lack of sufficient attestation. As a result of the negligence of defendant, a notary public who prepared the will, in failing to have the will properly attested, the same was declared to be invalid and plaintiff by intestate succession received only one-eighth of the estate (p. 648). In the second case, *Lucas* v. *Hamm,* 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685], an appeal on the pleadings, the beneficiaries under certain trust provisions set up in the will sued defendant, an attorney engaged by the testator to prepare

the will, alleging that he drafted the same in such a careless manner that the trust was invalid because it violated the rules relating to perpetuities and restraints in alienation, and that because of his negligence they were prevented from taking under the will. In *Heyer* v. *Flaig,* 70 Cal.2d 223 [74 Cal.Rptr. 225, 449 P.2d 161], also on the pleadings, the daughters of the testatrix sued the attorney retained by her to draft her will alleging that she told him she wished all of her estate to pass to plaintiffs and that she intended to remarry, which she did after execution of the will; and that defendant negligently failed to defeat the statutory rights of the new husband of testatrix as her post-testamentary spouse under section 70, Probate Code, first, because he did not include in the will any provision relative to the intended marriage or any language disinheriting him and second, because he did not advise her of the consequences of a post-testamentary marriage.

In each of the foregoing cases the alleged negligence of the draftsman resulted in some kind of legal defect in the will which ultimately frustrated in whole or in part the testator's expressed intent and the very objective of the document which but for the defect would have attained. The situation is far different from the one presented by plaintiff's pleading in which the will, admittedly validly executed by the testator possessed of testamentary capacity, contained no legal deficiency which prevented his wishes expressed therein from being carried out. Plaintiff's real complaint is that there was a deviation of the testator's intent for which he seeks to fault the draftsman, but under his pleading, if he was deprived of a substantial part of his father's estate it was the result not of a legal defect in the will or any negligence on the part of defendants but of the testator's change of mind. Whatever the origin of draftsmanship, there is no showing in the third amended complaint that when the testator executed the will it did not contain exactly what he intended it should. In each of the three cases the " 'end and aim' of the transaction was to provide for the passing of [the testator's] estate to *plaintiff.*" (Italics added.) (*Biakanja* v. *Irving,* 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358]); the "end and aim" of the transaction and the objective of the will in the instant case was to pass the testator's estate not to plaintiff but to his widow.

The order is affirmed.

Wood, P. J., and Gustafson, J., concurred.