[No. A099643. First Dist., Div. Two. June 20, 2003.]

CHERYL T. MOORE et al., Plaintiffs and Appellants, v.
ANDERSON ZEIGLER DISHAROON GALLAGHER & GRAY, P.C., et
al., Defendants and Respondents.

---

**COUNSEL**

Michael L. Boli for Plaintiffs and Appellants.

Senneff Freeman & Bluestone, Michael D. Senneff, and Bonnie A. Freeman for Defendants and Respondents.

---

**OPINION**

**KLINE, P. J.**—In an issue of first impression in this state, we consider whether an attorney has a duty to beneficiaries under a will to evaluate and ascertain the testamentary capacity of a client seeking to amend the will or to make a new will and whether the attorney also has a duty to beneficiaries to preserve evidence of that evaluation. We shall conclude the attorney owes the beneficiaries no such duties.

### FACTS AND PROCEDURAL HISTORY

Appellants Jeffrey K. Smith, Mark V. Smith, Scott Smith and Maureen Smith-Geoghegan appeal from the judgment dismissing their action for legal malpractice against respondents Attorney Rob Disharoon and the law firm of Anderson Zeigler Disharoon Gallagher & Gray, P.C. (Anderson Zeigler), following the court's sustaining of a demurrer without leave to amend. Appellants had sued respondents for malpractice in connection with respondents' preparation of amendments to the estate plan of appellants' father, Clyde P. Smith (Clyde).[1] The crux of appellants' malpractice claim was that Clyde lacked testamentary capacity in June 2000 when he executed the amendments to his estate plan, that respondents should have known that Clyde's testamentary capacity was "questionable," and that respondents acted negligently in failing to "assure, confirm and document" that Clyde had capacity and was competent to execute his will and trust amendments. Appellants alleged they were injured in that they received less under the terms of their settlement of ensuing trust litigation than they would have received under the trust before the June 2000 amendments and in the absence of trust litigation expenses and fees.

---

[1] Also a plaintiff in that litigation and an appellant here was Cheryl T. Moore, appellants' sister. Moore has notified this court that she abandons and dismisses her appeal. We therefore dismiss her from this appeal.

■ "Because this appeal is from a pretrial ruling sustaining demurrers without leave to amend, our recitation of the facts assumes the truth of all facts properly pleaded by the plaintiff-appellant (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814 [107 Cal.Rptr.2d 369, 23 P.3d 601]; *Morillion v. Royal Packing Co.* (2000) 22 Cal.4th 575, 579 [94 Cal.Rptr.2d 3, 995 P.2d 139]; *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58]), and likewise accepts as true all facts that may be implied or inferred from those she expressly alleges. (*Marshall v. Gibson, Dunn & Crutcher* (1995) 37 Cal.App.4th 1397, 1403 [44 Cal.Rptr.2d 339].)" (*Richelle L. v. Roman Catholic Archbishop* (2003) 106 Cal.App.4th 257, 264 [130 Cal.Rptr.2d 601].)

The first amended complaint alleged as follows: appellants are five of the nine adult children of decedent Clyde. Respondents represented Clyde. They prepared and amended estate plan documents for him, including amendments to a trust agreement called the Clyde P. Smith 1985 Trust. Under the terms of the amendment prepared by Attorney Disharoon and executed by Clyde in September 1999, upon the death of the trustor (Clyde), certain assets of the trust were to be distributed to two marital trusts and to a trust for Clyde's grandchildren. The residue was to be distributed to eight of Clyde's nine adult children (including appellants). The amendment provided that the ninth child, Michael D. Smith, was not a beneficiary of the trust.

The September 1999 amendment provided that upon Clyde's death, all of his shares of the common stock of Argonaut Constructors (Argonaut), a successful construction company,[2] should be distributed to the marital trusts, with directions that the trustees sell Argonaut shares "at a price and on terms the Trustees determine to be reasonable." The 1999 amendment provided that the marital trusts were to be managed for the benefit of Clyde's widow, Audrey, during her life, and that upon her death, after payment of estate taxes and a specific distribution of $100,000 to Saint Rose Parish, the remainder of the marital trusts were to be distributed to eight of Clyde's nine adult children, but that the ninth child, Michael D. Smith, was to receive nothing. The complaint alleged that Michael had already received substantial benefits and advantages from Clyde in that Argonaut had employed and promoted Michael and Michael had received substantial financial compensation and benefit from his employment.

The complaint further alleged that Disharoon had prepared the September 1999 amendments and knew that Clyde intended that Michael not receive anything under the trust amendments and that Clyde intended to benefit his eight other children with equal shares in the remainder of the trust.

---

[2] Appellants describe the company as "a closely held corporation controlled by Clyde."

Clyde became terminally ill. By June 2000, Clyde was "extremely sick, debilitated, and confused. Clyde had undergone chemotherapy and was under the influence of powerful medications, including pain medication. Clyde had to be hospitalized. By June 2000, Clyde lacked the capacity to know or understand his estate plan. He did not recollect nor understand the nature of his property or trust dispositions, nor recall his relation to his family members and children."

Disharoon was aware that Clyde was terminally ill and extremely weak. Nevertheless, in June 2000, Disharoon prepared new estate planning documents whereby the estate plan was fundamentally changed. These documents included: "Amendment in its Entirety to the Clyde Smith 1985 Trust," "Trustee Appointment under the Clyde Smith Retirement Plan" (appointing Clyde's sons Michael and Greg as trustees), and a new will. The new documents provided that all of Clyde's common shares of Argonaut would be distributed to Michael D. Smith outright for no payment or consideration. Clyde executed these documents on June 21, 2000. The complaint alleged that, when Clyde did so, he lacked testamentary capacity, was not competent and did not truly know or understand his appointments and property disposition. Clyde died on June 23, 2000.

A dispute arose among the children as to which trust amendment should govern the disposition of Clyde's property. Appellants retained counsel, as did Greg and Michael Smith in their capacity as trustees and defendants in the trust litigation. Expenses of the litigation were substantial and continuing and trust assets were being diminished by Greg's trustee fees and by attorney fees. After extensive discovery, the parties to the trust litigation reached a settlement. No determination was made of Clyde's capacity. The terms of the settlement allocated to appellants a portion of what they would have received under the trust as amended in September 1999, before the June 23, 2000 amendments.

Following settlement of the trust litigation, on June 20, 2001, appellants sued respondents Disharoon and Anderson Zeigler for malpractice. They filed a first amended complaint on January 25, 2002. In addition to the foregoing, the first amended complaint alleged that a competent estate planning attorney in the circumstances should have recognized that Clyde's testamentary capacity was "questionable because of Clyde's weakened and confused condition and medical treatment. A competent attorney in such circumstances should exercise reasonable care to confirm his client's capacity, competence, and intentions regarding the client's property dispositions, and should document such confirmation. Attorney Disharoon negligently

failed to do so in June 2000, and thereby breached the duty of care to effectuate his client's intent to benefit his eight children with the proceeds of the sale of the Argonaut shares." The first amended complaint also alleged that "a competent attorney would have recognized that litigation between the children was likely, unless the attorney took reasonable steps to investigate, confirm and document the client's capacity, competence, and testamentary intent."

Respondents demurred to the first amended complaint on the grounds that, as a matter of law, an attorney owes no duty of care to nonclients to determine whether the testator client possesses testamentary capacity. As a separate ground for demurrer, respondents asserted that the settlement of the will contest in the probate proceeding barred appellants from asserting the malpractice action under principles of estoppel and waiver.

At the hearing on the demurrer, the court and appellants agreed that the question of duty was one of law and that there was no factual amendment appellants could make to the complaint to establish that element if it were not already present. In an order filed June 12, 2002, the trial court granted the demurrer without leave to amend on the first ground presented, ruling: "The demurrer is sustained since this Court concludes as a matter of law that Defendants did not owe potential heirs any duty to determine the competency of Defendant's client to execute trust documents. Although there is no California case directly on point, this Court relies on the reasoning of *Radovich v. Locke-Paddon* [(1995)] 35 Cal.App.4th 946 [41 Cal.Rptr.2d 573] and out of state authority which has dealt directly with this issue, such as *Logotheti v. Gordon* [(1993)] 414 Mass. 308 [607 N.E.2d 1015]. Since it does not appear from the papers, and no reasons produced at the hearing, that the complaint can be amended to state a cause of action, this demurrer is sustained without leave to amend."

On June 12, 2002, judgment was entered dismissing the action. This timely appeal followed.

## DISCUSSION

### A. *Standard of review*

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a

reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan, supra,* 39 Cal.3d 311, 318.)

B. *The law*

■ " 'A key element of any action for professional malpractice is the establishment of a duty by the professional to the claimant. Absent duty there can be no breach and no negligence.' (*Goldberg v. Frye* (1990) 217 Cal.App.3d 1258, 1267 [266 Cal.Rptr. 483].)" (*Skarbrevik v. Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692, 700-701 [282 Cal.Rptr. 627].) ■ "Duty, in the context of negligence analysis, has been said to be ' "a shorthand statement of a conclusion, rather than an aid to analysis in itself. . . . '[D]uty' is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ' [Citations.] ' "Courts . . . have invoked the concept of duty to limit generally 'the otherwise potentially infinite liability which would follow from every negligent act . . . .' " ' [Citations.]".) (*Radovich v. Locke-Paddon, supra,* 35 Cal.App.4th 946, 954-955.)

■ "As a general rule, an attorney has no professional obligation to nonclients and thus cannot be held liable to nonclients for the consequences of the attorney's professional negligence . . . ." (Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2002) ¶ 6:240, italics omitted.) Consequently, " '[a]n attorney generally will not be held liable to a third person not in privity of contract with him since he owes no duty to anyone other than his client. The question of whether an attorney may, under certain circumstances, owe a duty to some third party is essentially one of law and, as such, involves "a judicial weighing of the policy considerations for and against the imposition of liability under the circumstances. [Citation.]" (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737].)' (*Schick v. Lerner* (1987) 193 Cal.App.3d 1321, 1329 [238 Cal.Rptr. 902].)" (*Skarbrevik v. Cohen, England & Whitfield, supra,* 231 Cal.App.3d 692, 701.)

■ As an exception to this general rule, it has been settled in California that an attorney may be liable to nonclients in limited circumstances where

the nonclient was the *intended beneficiary* of the attorney's services. (*Lucas v. Hamm* (1961) 56 Cal.2d 583, 589-591 [15 Cal.Rptr. 821, 364 P.2d 685]; accord, *Heyer v. Flaig* (1969) 70 Cal.2d 223, 226 [74 Cal.Rptr. 225, 449 P.2d 161], disapproved on another point in *Laird v. Blacker* (1992) 2 Cal.4th 606, 617 [7 Cal.Rptr.2d 550, 828 P.2d 691]; *Bucquet v. Livingston* (1976) 57 Cal.App.3d 914, 921 [129 Cal.Rptr. 514].) The lack of privity will not necessarily preclude an intended beneficiary under a will from maintaining an action against the testator's attorney on either a contractual theory of third party beneficiary or a tort theory of negligence. (*Bucquet v. Livingston, supra,* 57 Cal.App.3d 914, 921-922.) Such liability is not, however, automatic. (*Id.* at p. 921.)

"All of the authorities indicate that a determination whether liability exists in a specific case is a matter of policy and involves the balancing of various factors, including: 1) the extent to which the transaction was intended to affect the plaintiff; 2) the foreseeability of harm to him; 3) the degree of certainty that the plaintiff suffered injury; 4) the closeness of the connection between the defendant's conduct and the injury suffered; 5) the moral blame attached to the defendant's conduct; and 6) the policy of preventing future harm [citations]." (*Bucquet v. Livingston, supra,* 57 Cal.App.3d at p. 921, citing *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650 [320 P.2d 16, 65 A.L.R.2d 1358] and *Lucas v. Hamm, supra,* 56 Cal.2d at p. 588.) These factors were identified by the Supreme Court in *Biakanja v. Irving, supra,* 49 Cal.2d 647 (*Biakanja*), in which a notary public was held liable in tort to the intended beneficiary of a will which was ineffective because of the notary's negligent supervision of its attestation.

Later cases have considered two additional factors to be critical to the duty determination. One is the likelihood that imposition of liability might interfere with the attorney's ethical duties to the client. (*Goodman v. Kennedy, supra,* 18 Cal.3d 335, 344; *St. Paul Title Co. v. Meier* (1986) 181 Cal.App.3d 948, 952 [226 Cal.Rptr. 538].) The Supreme Court has also considered the related question of whether the imposition of liability "would impose an undue burden on the profession." (*Lucas v. Hamm, supra,* 56 Cal.2d at p. 589.)

In *Lucas v. Hamm, supra,* 56 Cal.2d 583 (*Lucas*), the court determined that negligence in the drafting of a will that caused a bequest to the plaintiff-beneficiaries to be invalid could entitle the beneficiaries named in the will to

bring an action against the drafting attorney.[3] The court stated: "We are of the view that the extension of [the attorney's] liability to beneficiaries injured by a negligently drawn will does not place an undue burden on the profession, particularly when we take into consideration that a contrary conclusion would cause the innocent beneficiary to bear the loss." (*Lucas,* at p. 589; see *Garcia v. Borelli* (1982) 129 Cal.App.3d 24, 32 [180 Cal.Rptr. 768]; see also Rest.3d Law Governing Lawyers, § 51(3) and com. f, p. 361.)

*Heyer v. Flaig, supra,* 70 Cal.2d 223 (*Heyer*), similarly involved negligence in the drafting of a document which did not carry out the testator's intent. In that case, the testator had retained the attorney to prepare her will, telling him she wished her estate to pass to her two daughters and that she intended to remarry. The attorney drafted the will providing for the two daughters, but failed to include any mention of the intent of the testator to remarry and to not make any provision for her new spouse. The testator remarried 10 days after the will was executed. Upon her death, the new spouse claimed a portion of the estate as a posttestamentary spouse under then Probate Code section 70. The attorney was sued by the testator's daughters. On appeal, after the sustaining of a demurrer, the dispositive issue was the statute of limitations. However, the Supreme Court preliminarily reviewed the principles stated in *Biakanja* and *Lucas.* The court recognized that the theory of tort liability to the intended beneficiary "for a breach of duty owed directly to him," lay "[a]t the heart of our decision in *Lucas v. Hamm* . . . ." (*Heyer* at pp. 226-227.) "*Heyer* strongly reinforced the theory that an attorney who 'undertakes to fulfill the testamentary instructions of his client . . . realistically and in fact assumes a relationship . . . also with the client's intended beneficiaries,' that 'the possibility of injury to an intended beneficiary' is foreseeable should the client's testamentary plan fail after his or her death, and that in such an eventuality 'only the beneficiaries suffer the real loss. We recognized in *Lucas* that unless the beneficiary could recover against the attorney in such a case, no one could do so and the social policy of preventing future harm would be frustrated. [¶] . . . . We impose this duty because of the relationship between the attorney and the intended beneficiary; public policy requires that the attorney exercise his position of trust and superior knowledge responsibly so as not to affect adversely persons whose rights and interests are certain and foreseeable.' (*Id.* at pp. 228-229.)" (*Radovich v. Locke-Paddon, supra,* 35 Cal.App.4th at pp. 958-959.)

---

[3]Although it held that there was no bar to finding a duty to third party beneficiaries in these circumstances, the court ultimately refused to find the attorney liable because the drafting error, a violation of the rule against perpetuities and restraints on alienation did not show negligence. (*Lucas, supra,* 56 Cal.2d at pp. 592-593.)

These cases were distinguished and no duty to beneficiaries was found in *Radovich v. Locke-Paddon, supra*, 35 Cal.App.4th 946 (*Radovich*). There, the court held that the defendant attorney and his firm owed no duty of care to the client's husband, as a potential beneficiary named in an unsigned will. In *Radovich*, the attorney had prepared a new will for a client naming the husband as a beneficiary. The client had died without executing the will. The husband sued the attorney and the firm for malpractice, alleging that they owed a duty to the husband to carry out the decedent's testamentary wishes in a reasonably prompt and diligent fashion and had breached that duty in failing to remind the decedent to execute the will or even to find out whether she had done so. (*Id.* at p. 954.) The *Radovich* court distinguished *Biakanja, Lucas* and *Heyer* on the grounds that "the decedent never signed the will Locke-Paddon drafted. While the crux of *Biakanja, Lucas* and *Heyer* was that a will the decedent *had signed* had been rendered wholly or partially ineffective, at least as to the beneficiaries, by the negligence of the person who had prepared the will, the crux of Radovich's claim is that a will potentially beneficial to him had never become effective because, assertedly due to Locke-Paddon's negligence the decedent *had not signed* it." (*Id.* at p. 959, original italics.) The *Radovich* court recognized that most of the *Biakanja* factors did not so clearly militate in favor of finding a duty as they had in *Biakanja, Lucas* or *Heyer*. (*Id.* at p. 963.) The will was not defective by reason of its draftsmanship. There was no argument that the will would have been ineffective to achieve the disposition of assets the deceased would have preferred. Thus, the " 'extent to which the transaction was intended to affect' " Radovich depended on the perception of the nature of the transaction. It was not clear that the decedent had not changed her mind. (*Id.* at pp. 963-964.) Moreover, the *Radovich* court saw "both practical and policy reasons for requiring more evidence of commitment than is furnished by a direction to prepare a will containing specified provisions. . . . From a policy standpoint, we must be sensitive to the potential for misunderstanding and the difficulties of proof inherent in the fact that disputes such as these will not arise until the decedent—the only person who can say what he or she intended—has died. Thus we must as a policy matter insist on the clearest manifestation of commitment the circumstances will permit." (*Id.* at p. 964.) The " 'foreseeability of harm' " to the beneficiary, the certainty that he " 'suffered injury' " attributable to the attorney's conduct, and the " 'closeness of the connection' " between the attorney's conduct and the alleged injury were all significantly less than they would have been in a case in which a new testamentary document had been executed by the testator before she died. (*Ibid.*)

Most importantly, the *Radovich* court recognized strong "[c]ountervailing policy considerations" that in the circumstances cut against imposition of a

duty. (*Radovich, supra,* 35 Cal.App.4th at p. 965.) "[I]mposition of liability in a case such as this could improperly compromise an attorney's primary duty of undivided loyalty to his or her client, the decedent. . . , '[i]mposition of liability would create an incentive for an attorney to exert pressure on a client to complete and execute estate planning documents summarily,' without the additional consideration the decedent in this case intended to give them, and '[f]ear of liability to potential third party beneficiaries would contravene the attorney's primary responsibility to ensure that the proposed estate plan effectuates the client's wishes and that the client understands the available options and the legal and practical implications of whatever course of action is ultimately chosen.' [Citation.]" (*Ibid.*) On weighing the relevant policy considerations, the court concluded the attorney owed no duty to the beneficiary to inquire whether the decedent had any question or wished further assistance in completing the change in testamentary disposition she had discussed with him. (*Ibid.*)

## C. *No duty to beneficiaries to ascertain or document testator's capacity*

The considerations identified in *Radovich*, as well as in *Lucas* and the negligent drafting and execution cases, lead to the conclusion that an attorney preparing a will for a testator *owes no duty to the beneficiary of the will or to the beneficiary under a previous will* to ascertain and document the testamentary capacity of the client.

First and foremost, we believe the duty of loyalty of the attorney to the client may be compromised by imposing a duty to beneficiaries in these circumstances. "[O]ur own Supreme Court has recently reaffirmed the fundamental importance of an attorney's duty of undivided loyalty to his or her client. (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 289 [36 Cal.Rptr.2d 537, 885 P.2d 950].)" (*Radovich, supra,* 35 Cal.App.4th at p. 962.)

In *Flatt v. Superior Court, supra,* 9 Cal.4th 275, the Supreme Court held that an attorney's duty of loyalty to an existing client negated any duty to give advice to a new or prospective client. In declining to represent the plaintiff in his case against the existing client, the attorney had no duty to inform the plaintiff of the statute of limitations applicable to his proposed lawsuit or to advise him to seek alternative counsel, since the defendant's firm was already representing the existing client in an unrelated matter. Counsel could not be held liable for malpractice to the second client, as imposition of such a duty would irreconcilably conflict with the duty of loyalty to the existing client. Regarding the duty of loyalty, the court reiterated, " 'This obligation is a very high and stringent one. It is also an

attorney's duty to protect his client in every possible way, and it is a violation of that duty for him to assume a position adverse or antagonistic to his client without the latter's free and intelligent consent given after full knowledge of all the facts and circumstances. [Citation.] *By virtue of this rule an attorney is precluded from assuming any relation which would prevent him from devoting his entire energies to his client's interests. . . .'* " (*Id.* at p. 289, original italics.)

In the *Biakanja-Lucas-Heyer* line of cases, there is clearly no potential for conflict between the duty the attorney owes to the client and the duty the attorney owes to intended beneficiaries. The testator and the beneficiaries want the will allowed. The intention of the testator is certain in the circumstance presented in those cases. Only the negligence of the attorney, resulting in the invalidity of the document or bequest, frustrates the intention of the testator.

In contrast, where the testamentary capacity of the testator is the basis for a will challenge, the true intent of the testator *is* the central question. That intent cannot be ascertained from the will or other challenged estate plan document itself. The attorney who is persuaded of the client's testamentary capacity by his or her own observations and experience, and who drafts the will accordingly, fulfills that duty of loyalty *to the testator*. In so determining, the attorney should not be required to consider the effect of the new will on beneficiaries under a former will or beneficiaries of the new will.

The extension of the duty to intended beneficiaries recognized in *Biakanja, Lucas,* and *Heyer* to this context would place an intolerable burden upon attorneys. Not only would the attorney be subject to potentially conflicting duties to the client and to potential beneficiaries, but counsel also could be subject to conflicting duties to different sets of beneficiaries. The testator's attorney would be placed in the position of potential liability to either the beneficiaries disinherited if the attorney prepares the will or to the potential beneficiaries of the new will if the attorney refuses to prepare it in accordance with the testator's wishes. The instant case, where some children benefited under the previous will and others benefited under the later, challenged will is a perfect illustration of that burden.

Appellants argue that the burden is ephemeral, as competent counsel has a duty to the testator to ascertain competence before drafting the will and by documenting that exploration, counsel guards against groundless challenges to the testator's competency. We are not persuaded that imposition of such a burden on counsel would result in less litigation. Ascertaining testamentary

capacity is often difficult and the potential for liability to beneficiaries who might deem any investigation inadequate would unjustifiably deny many persons the opportunity to make or amend their wills.

Factors which might suggest lack of testamentary capacity to some attorneys do not necessarily denote a lack of capacity. ▮ "It has been held over and over in this state that old age, feebleness, forgetfulness, filthy personal habits, personal eccentricities, failure to recognize old friends or relatives, physical disability, absent-mindedness and mental confusion do not furnish grounds for holding that a testator lacked testamentary capacity." (*Estate of Selb* (1948) 84 Cal.App.2d 46, 49 [190 P.2d 277].) Even hallucinations and delusions do not demonstrate lack of capacity if not related to the testamentary act. (*Estate of Perkins* (1925) 195 Cal. 699, 704 [235 P. 45]; see also *Estate of Fritschi* (1963) 60 Cal.2d 367, 372 [33 Cal.Rptr. 264, 384 P.2d 656] [testator in hospital with fatal cancer, physically weak, disturbed and under heavy dosage of drugs possessed testamentary capacity].) Any doubts as to capacity might be resolved by counsel by refusing to draft the will as desired by the testator, turning the presumption of testamentary capacity on its head and requiring the testator represented by a cautious attorney to prove his competency.

▮ In the situation presented in *Biakanja, Lucas,* and *Heyer,* intended beneficiaries of the invalid will or trust documents were left with no remedy and no way to secure the undisputed intention of the testator. Their only avenue for redress was via a malpractice action against the negligent attorney. In contrast, beneficiaries disinherited by a will executed by an incompetent testator have a remedy in the probate court. They may contest the probate and challenge the will on the ground that the testator lacked testamentary capacity at the time of executing the will. That is precisely what appellants did in this case.

In addition, the other factors relevant to the duty analysis are less compelling here than in the *Biakanja-Lucas-Heyer* situation. Although appellants allege that Clyde lacked testamentary capacity, it is far less clear in this case than in the drafting and execution error cases that the testator intended to benefit appellants to the exclusion of Michael. As drafted, the will here is effective to carry out the presumed intention of the testator. It does exactly what it purports to do. The question of Clyde's capacity or lack thereof is one that cannot be determined from the will itself, unlike those cases involving invalidly drafted or executed wills in which the document itself demonstrates the intention of the testator to benefit the beneficiary.

As did *Radovich,* this case presents both practical and policy reasons for refusing to extend the duty in these circumstances. We, too "must be

sensitive to the potential for misunderstanding and the difficulties of proof inherent in the fact that disputes such as these will not arise until the decedent—the only person who can say what he or she intended—has died." (*Radovich, supra,* 35 Cal.App.4th at p. 964.) Similarly, the "foreseeability of harm" to appellants, and the degree of certainty that they "suffered injury" attributable to respondents' conduct, and the "closeness of the connection" between their conduct and the injury the appellants assertedly suffered are all less than in the *Biakanja, Lucas,* and *Heyer* cases.

No California case directly addresses the duty question in the alleged incapacity context presented here. However, our conclusion is reinforced by the Restatement and by out-of-state cases.

The Restatement Third of Law Governing Lawyers, section 51, summarizes the duties of a lawyer to a nonclient, providing in relevant part that "a lawyer owes a duty to use care . . . [¶] . . . [¶] (3) to a nonclient when and to the extent that: [¶] (a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient; [¶] (b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and [¶] (c) the absence of such a duty would make enforcement of those obligations to the client unlikely . . . ." Comment b provides the rationale for the rule. "Lawyers regularly act in disputes and transactions involving nonclients who will foreseeably be harmed by inappropriate acts of the lawyers. Holding lawyers liable for such harm is sometimes warranted. Yet it is often difficult to distinguish between harm resulting from inappropriate lawyer conduct on the one hand and, on the other hand, detriment to a nonclient resulting from a lawyer's fulfilling the proper function of helping a client through lawful means. Making lawyers liable to nonclients, moreover, could tend to discourage lawyers from vigorous representation. Hence, a duty of care to nonclients arises only in the limited circumstances described in the Section. Such a duty must be applied in light of those conflicting concerns." (Rest.3d Law Governing Lawyers, § 51, com. b, p. 358.)

Comment f further explains the duty analysis: "*A nonclient enforcing a lawyer's duties to a client.* When a lawyer knows . . . that a client intends a lawyer's services to benefit a third person who is not a client, allowing the nonclient to recover from the lawyer for negligence in performing those services may promote the lawyer's loyal and effective pursuit of the client's objectives. The nonclient, moreover, may be the only person likely to enforce the lawyer's duty to the client, for example because the client has died. [¶] A nonclient's claim under Subsection (3) is recognized only when

doing so will both implement the client's intent and serve to fulfill the lawyer's obligations to the client without impairing performance of those obligations in the circumstances of the representation. A duty to a third person hence exists only when the client intends to benefit the third person as one of the primary objectives of the representation, as in the Illustrations below . . . . Without adequate evidence of such an intent, upholding a third person's claim could expose lawyers to liability for following a client's instructions in circumstances where it would be difficult to prove what those instructions had been. Threat of such liability would tend to discourage lawyers from following client instructions adversely affecting third persons. . . ." (Rest.3d Law Governing Lawyers, § 51, com. f, p. 361.)

Illustration 4 following comment f is on point. In the illustration, the client retains the lawyer to prepare and help in the drafting and execution of a will leaving the estate to one other than the testator's heir and the lawyer does so. "After Client's death, Heir has the will set aside on the ground that Client was incompetent and then sues Lawyer for expenses imposed on Heir by the will, alleging that Lawyer negligently assisted Client to execute a will despite Client's incompetence. *Lawyer is not subject to liability to Heir for negligence. Recognizing a duty by lawyers to heirs to use care in not assisting incompetent clients to execute wills would impair performance of lawyers' duty to assist clients even when the clients' competence might later be challenged.* . . ." (Rest.3d Law Governing Lawyers, § 51, com. f, illus. 4, pp. 362-363, italics added.)[4]

These policy concerns led the Supreme Court of Massachusetts in *Logotheti v. Gordon, supra,* 607 N.E.2d 1015, to refuse to impose liability to the intestate heirs at law of the deceased client upon an attorney who drafted a will that was later invalidated on grounds of a lack of testamentary capacity and undue influence. The court affirmed the judgment dismissing the complaint against the attorney, "based on our conclusion that the [attorney] did not owe a duty of care [to the intestate heirs]." (*Id.* at p. 310 [607 N.E.2d at p. 1017].) The court reasoned that the mere foreseeability of harm to heirs is an insufficient basis upon which to impose a duty owed to them. (*Id.* at p. 311 [607 N.E.2d at p. 1017].) The court distinguished *Lucas* and other similar cases imposing a duty to intended beneficiaries of a competent testator: "In those cases, there is no conflict between the duty the attorney owes to his or her client and the duty the attorney owes to intended

---

[4]Appellants challenge use of illustration 4, as it is based upon an unpublished case. However, no authority of which we are aware requires the Restatement to limit its scope to published authority. The strength of the Restatement lies in its analysis, which we find persuasive here. We note that the illustration also cites *Radovich, supra,* 35 Cal.App.4th 946, as well as out-of-state authorities.

beneficiaries. The beneficiaries, like the testator, want the will allowed. [¶] The present case is significantly different from those cases. Here, there is no suggestion in the pleadings that [the heir] was an intended beneficiary of a competent testator's will." (*Id.* at p. 311 [607 N.E.2d at pp. 1017-1018].) "An attorney owes to a client, or a potential client, for whom the drafting of a will is contemplated, a duty to be reasonably alert to indications that the client is incompetent or is subject to undue influence and, where indicated, to make reasonable inquiry and a reasonable determination in that regard. An attorney should not prepare or process a will unless the attorney reasonably believes the testator is competent and free from undue influence. In making the required determination, the attorney must have undivided loyalty to the client. [Citation.] A fair, objective determination in every case is in the best interest of the client. However, the financial interest of one who would only take by intestate succession would not be served in those cases where the attorney decides that the client is competent and free from undue influence, and a will is prepared. If we were to hold that, in the circumstances of this case as alleged in the complaint, the defendant owed a duty of care both to [the testator] and [the heir], we would be imposing conflicting duties on attorneys. This, we shall not do." (*Id.* at pp. 311-312 [607 N.E.2d at p. 1018].)

We see no policy distinction between the case where the potential heir, disappointed by the making of a will is one who would take by intestate succession and the case where the disappointed heir was the beneficiary of a previously drafted will. In both circumstances, the specter of liability would subject the attorney to conflicting burdens and would dilute the undivided duty of loyalty to the client. Indeed, the circumstances of *Logotheti*, in which the disappointed heir succeeded in setting aside the will for incompetence and undue influence, presents a more sympathetic case for extension of a duty than that presented by the instant case, where it has never been judicially determined that the testator was incompetent at the time of executing the new will and the will was never set aside.

Other states have reached similar conclusions, refusing to allow nonclient purported third party beneficiaries to maintain malpractice actions against attorneys who had drafted wills for clients who were later asserted to have lacked capacity to make the will. In *Morgan v. Roller* (1990) 58 Wash.App. 728, 732-733 [794 P.2d 1313, 1316], beneficiaries under a will sued the drafter of the will to recover the costs of successfully defending a will contest. The court held the attorney had no duty to inform intended beneficiaries under the will of his view, based on subsequent contacts with the testator, that she was incompetent at the time the will was executed. (See, e.g., *Francis v. Piper* (1999 Minn.Ct.App.) 597 N.W.2d 922 [attorney had no

duty to testator's sole living relative, who claimed that testator lacked capacity to enter into the will].)

Appellants contend that *Hiemstra v. Huston* (1970) 12 Cal.App.3d 1043 [91 Cal.Rptr. 269] "foreshadowed that a testator's lack of capacity could result in the testator's lawyer confronting potential liability to an adversely affected beneficiary." We disagree.

In *Hiemstra* the appellate court affirmed an order of dismissal following the sustaining of a demurrer. The plaintiff, decedent's son and beneficiary under a previous will, alleged that the attorney was negligent in drafting a will for decedent at the request of decedent's wife, who advised the attorney that her husband was seriously ill. The plaintiff alleged the attorney had drafted the will without instruction from the testator and without knowing decedent's physical or mental condition, the amount or nature of his properties, or his true dispositive testamentary wishes or intent, family situation or prior wills and thereafter prevailed upon the decedent to leave the estate to his wife, materially reducing the plaintiff's share. (*Hiemstra v. Huston, supra,* 12 Cal.App.3d at p. 1045.) The plaintiff argued that he had stated a cause of action under the *Biakanja, Lucas,* and *Heyer.* The appellate court disagreed, declining to extend the duty to the disappointed beneficiary, stating: "However, unlike the foregoing three cases in which, through an alleged failure of defendant to use care in drafting the will, a legal defect resulted therein which defeated in whole or in part the stated intent of the testator in and the very objective of the will, the thrust of plaintiff's cause herein is negligence consisting of drafting a will without instructions from the testator and in ignorance of his true testamentary wishes. [¶] *Nothing in the third amended complaint points to any claim that defendants' alleged negligence resulted in any legal deficiency in the will which would prevent its probate and frustrate the testator's expressed intent therein to leave the bulk of his estate to his widow.* Nor therein has plaintiff asserted either as a conclusion or by allegation of ultimate facts that the will failed to reflect the testator's true dispositive and testamentary intent or desires *at the time it was approved and executed* by him and that it did not contain exactly what he wanted it to contain and dispose of his estate in the manner in which the testator then intended. Further plaintiff has failed to allege that the will was not validly executed; *that the testator was not possessed* of testamentary capacity or that the will was executed as the result of undue influence. While the pleading asserts the testator was confined to the hospital with a serious illness and died 13 days after execution of the document, illness alone does not cast doubt on his testamentary capacity. . . . Testamentary capacity is always presumed to exist unless the contrary is established. [Citation.]" (*Id.* at pp. 1046-1047, 1st and 3d italics added.)

"In each of the foregoing cases [*Biakanja, Lucas,* and *Heyer*] the alleged negligence of the draftsman resulted in some kind of legal defect in the will which ultimately frustrated in whole or in part the testator's expressed intent and the very objective of the document which but for the defect would have attained. The situation is far different from the one presented by plaintiff's pleading in which the will, admittedly validly executed *by the testator possessed of testamentary capacity,* contained no legal deficiency which prevented his wishes expressed therein from being carried out." (*Hiemstra v. Huston, supra,* 12 Cal.App.3d at p. 1048, italics added.)

Appellants contend the *Hiemstra* opinion's caveat suggests that a testator's lawyer would confront potential malpractice liability to a beneficiary for allowing the testator who lacked mental capacity to execute a dispositive instrument. Although the court seized upon the absence of a direct allegation that the testator lacked testamentary capacity, the court's holding was not dependent upon that dicta. The plaintiff had alleged that the will was drafted by the attorney without knowing the decedent's physical or mental condition or his testamentary wishes or intent—akin to the allegations here that counsel was negligent in failing to investigate the decedent's capacity. The *Hiemstra* court distinguished *Biakanja, Lucas,* and *Heyer* on the grounds that if the plaintiff were deprived of a substantial part of his father's estate, it was not from negligent drafting resulting in a legal defect in the will which frustrated the testator's expressed intent and objective as expressed in the document itself, but from the testator's change of mind. (*Hiemstra v. Huston, supra,* 12 Cal.App.3d at p. 1048.)

Finally, appellants rely upon several secondary sources, including Model Rules of Professional Conduct published by the American Bar Association (Model Rules), ACTEC Commentaries on the Model Rules of Professional Conduct published by the American College of Trusts and Estate Counsel Foundation (ACTEC Commentaries), and various practice guides published by California Continuing Education of the Bar (CEB) and others for the proposition that an estate planning lawyer has a duty to determine that his or her client has testamentary capacity when executing a will or dispositive instrument and that when there is doubt, a competent attorney should take reasonable steps to confirm the client's capacity and to preserve evidence of that determination.

These secondary sources are a slim reed upon which to posit such duties to nonclient beneficiaries. First, we believe that California law, informed by the Restatement and the law of sister states, provides an adequate guide for analysis. Moreover, the practice guides, secondary sources, and commentaries relied upon by appellants do not so clearly advocate for a duty as

appellants maintain. More to the point, several of the cited sources recognize the practical pitfalls inherent in imposing a duty upon counsel to assess the capacity of the testator and *none indicate that such duty would run to beneficiaries* rather than solely to the testator. For example:

Rule 1.14 of the Model Rules provides; "(a) When a client's ability to make adequately considered decisions in connection with the representation is impaired, whether because of minority, mental disability or for some other reason, the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client. [¶] (b) A lawyer may seek the appointment of a guardian or take other protective action with respect to a client only when the lawyer reasonably believes that the client cannot adequately act in the client's own interest."

The ACTEC Commentaries on the Model Rules have advised, *"Testamentary Capacity*. If the testamentary capacity of a client is uncertain, the lawyer should exercise particular caution in assisting the client to modify his or her estate plan. The lawyer generally should not prepare a will or other dispositive instrument for a client who the lawyer reasonably believes lacks the requisite capacity. *On the other hand, because of the importance of testamentary freedom, the lawyer may properly assist clients whose testamentary capacity appears to be borderline.* In any such case the lawyer should take steps to preserve evidence regarding the client's testamentary capacity." (ACTEC Commentaries (3d ed. 1999) at p. 218, italics added.)

A CEB Action Guide citing the ACTEC Commentaries advises that *"[i]t is difficult for an attorney to discharge both the duty of undivided loyalty and the duty to act competently when a client's testamentary capacity is questionable,* because: [¶] a. An attorney should not prepare a will or other dispositive instrument for a client whom the attorney believes lacks the requisite capacity [citations]; but [¶] b. The attorney 'may properly assist clients whose testamentary capacity appears to be borderline.' [Citation.]" (Camp et al., Action Guide: Capacity and Undue Influence: Assessing, Challenging, and Defending (Cont.Ed.Bar 2001) p. 13, italics added.) This "Action Guide" also advises that the attorney "[m]ake it clear to the client and others who may be involved that the attorney's duties, including the duty of confidentiality, *are owed only to the client." (Id.* at p. 10, italics added.)

A CEB program handbook counsels that "prudent practitioners should be aware of the statutory standards under Prob[ate] C[ode] § 811 [et seq.] for determination of capacity, the nature of mental function deficits specified, and 'evidence of a correlation between the deficit(s) and the decision or acts in question' [citation]." (Wilcox, Ethical Considerations in Elder Law Practice in Assessing Capacity and Undue Influence: Avoiding Will Contests - Litigating Will Contest, Undue Influence, and Capacity Cases (Cont.Ed.Bar

Mar. 2002) § 2.41C, p. 90.) Nevertheless, that same program handbook concludes, in accordance with case law, that because the attorney owes his or her undivided loyalty to the interests of the client, the attorney's only duty of care is to intended beneficiaries of a testator-client whose testamentary rights are impaired by negligent drafting. (*Id.,* § 2.27, p. 83.) So paramount is the duty of loyalty, that in this state, the attorney may not institute conservatorship proceedings on a client's behalf without consent, even when the attorney concludes the client is incompetent, because of the prohibition against disclosure of client confidences. (*Id.,* § 2.24, p. 82.)

It may be that prudent counsel should refrain from drafting a will for a client the attorney reasonably believes lacks testamentary capacity or should take steps to preserve evidence regarding the client's capacity in a borderline case. However, that is a far cry from imposing malpractice liability to nonclient potential beneficiaries for the attorney's alleged inadequate investigation or evaluation of capacity or the failure to sufficiently document that investigation. None of the cited secondary sources appear to even suggest imposition on the attorney of such a duty to nonclients. We conclude that the policy considerations present in these circumstances and discussed above strongly militate against imposition on the testator's lawyer of a duty to nonclient beneficiaries to investigate, evaluate and ascertain the testator's capacity or to document the same.

We conclude the trial court properly sustained respondents' demurrer in this action. Because appellants have conceded there is no reasonable possibility that this defect in the complaint can be cured by amendment, the trial court did not err in granting the demurrer without leave to amend.

DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on this appeal.

Haerle, J., and Lambden, J., concurred.