[No. H027258. Sixth Dist. Nov. 22, 2004.]

SIMONA OSORNIO, Plaintiff and Appellant, v.
LAWRENCE A. WEINGARTEN, as Personal Representative, etc.,
Defendant and Respondent.

305

**COUNSEL**

Cartwright, Fulton & Adams and David A. Fulton for Plaintiff and Appellant.

Wilson, Elser, Moskowitz, Edelman & Dicker, Louis H. Castoria and Debra S. Blum for Defendant and Respondent.

**OPINION**

**WALSH, J.—** ■ In *Lucas v. Hamm* (1961) 56 Cal.2d 583 [15 Cal.Rptr. 821, 364 P.2d 685] (*Lucas*), our Supreme Court rejected the traditional rule that an attorney owed no duty to nonclients. The court held that beneficiaries could sue the attorney whose negligent preparation of a will caused them to lose their testamentary rights, where the attorney's engagement was intended to benefit the nonclient, and the imposition of liability would not place an undue burden upon the legal profession. (*Id.* at p. 591.)

Our case is one of first impression involving a potential extension of *Lucas*. Simona Osornio, a nonclient, was the named executor and sole beneficiary under a will. Because she was care custodian to the testator, a dependent adult, Osornio was a presumptively disqualified donee under Probate Code section 21350, subdivision (a)(6).[1] Accurately anticipating that a probate court would decide that she could not overcome that presumption by clear and convincing proof, Osornio claimed that the bequest to her failed because of the negligence of Saul Weingarten, the attorney who drafted the will on behalf of the testator.

Though Osornio's allegations are less than clear, her theory of negligence is apparently that Weingarten owed her a duty of care as the testator's intended beneficiary, and that, at the time the will was drawn, Weingarten: (1) failed to advise the testator that her intended beneficiary, Osornio, would be presumptively disqualified unless the testator obtained a certificate of independent review from another attorney, under section 21351, subdivision (b) (hereafter section 21351(b)); and (2) failed to take appropriate measures to

---

[1] All statutory references are to the Probate Code unless otherwise indicated.

ensure that the testator's wishes were carried out by referring her to counsel to obtain such a certificate. The trial court sustained Weingarten's demurrer to the complaint without leave to amend, and Osornio appeals.

We conclude that the complaint, as drafted, did not state a cause of action. We find further, however, that nonclient Osornio could have readily amended the complaint to state a cause of action for professional negligence against attorney Weingarten under *Lucas* and its progeny. Accordingly, the trial court abused its discretion by sustaining the demurrer without leave to amend, and we reverse the judgment.

FACTS

I. *Complaint*

■ The facts recited below are from the allegations made in the complaint. In reviewing the propriety of the trial court's sustaining of the demurrer, we, of course, accept as true the factual allegations properly pleaded in the complaint. (See *Construction Protective Services, Inc. v. TIG Specialty Ins. Co.* (2002) 29 Cal.4th 189, 193 [126 Cal.Rptr.2d 908, 57 P.3d 372]; *Cryolife, Inc. v. Superior Court* (2003) 110 Cal.App.4th 1145, 1152 [2 Cal.Rptr.3d 396].)

Weingarten was a licensed California attorney practicing law in the County of Monterey.[2] In the early 1990's the testator, Dora Ellis, retained Weingarten to draft a will. On or about September 19, 2001, Ellis requested that Weingarten prepare a new will that would (a) revoke her prior wills and codicils, and (b) name Osornio as the executor and sole beneficiary under Ellis's new will.

The September 19, 2001 will (2001 Will) prepared by Weingarten on behalf of Ellis "failed to include a Certificate of Independent Review as required by California Probate Code Section 21350 et seq." Therefore (the complaint alleges), Weingarten failed to exercise reasonable care in performing legal services for Ellis.

Osornio was the intended sole beneficiary of Ellis, and she would have received the entire value of Ellis's estate had Weingarten exercised reasonable care, skill, and diligence in preparing the 2001 Will. Osornio alleges

---

[2] In the briefing on appeal, we were advised that Weingarten passed away on February 18, 2004, shortly before judgment was entered below. Accordingly, we entered an order in this appeal on September 14, 2004, substituting, as defendant and respondent, Lawrence A. Weingarten as personal representative of the estate of Saul Weingarten. This substitution of parties notwithstanding, for convenience, we refer to defendant and respondent as "Weingarten" throughout this opinion.

that, as a direct and proximate result of Weingarten's negligence, she was precluded from receiving the value of the estate under the 2001 Will and was thereby damaged.

## II. *Other Relevant Facts*

■ There are facts other than those alleged in the complaint that both appear undisputed and are material to our consideration of this appeal. These undisputed facts are disclosed in a written decision after trial in the probate court involving the Ellis estate.[3] That decision was attached to a request for judicial notice filed by Weingarten in support of his demurrer and was properly considered in connection with the demurrer. (See Evid. Code, § 452, subd. (d); *Frommhagen v. Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1299 [243 Cal.Rptr. 390] [in ruling on demurrer, "court may take judicial notice of the official acts or records of any court in this state"].)

Peggy Williams was the beneficiary under Ellis's prior will, dated October 7, 1993 (1993 Will); the prior will contained two codicils dated June 29, 1994, and July 10, 1997, respectively. Ellis died in May 2002. Williams filed a petition to probate the 1993 Will. Osornio objected to the Williams petition and filed a separate petition to probate the 2001 Will. Williams objected to the Osornio petition on the grounds of lack of capacity and undue influence. The dispute proceeded to trial in the probate court in June 2003.

The parties to the probate proceeding stipulated that Osornio "was a care custodian of a dependent adult, Dora Ellis, in September 2001 and that the provisions of Probate Code Section 21350[, subdivision] (a)(6) applied." Similarly, Osornio admitted in her opposition to the demurrer that she was Ellis's care custodian, "thus triggering the provisions of Probate Code Section 21350[, subdivision] (a)(6)." It is further apparent that, at the time Ellis consulted Weingarten in September 2001, he was aware that Osornio was Ellis's care custodian.[4] The probate court concluded after trial—in its tentative decision dated August 29, 2003[5]—that Osornio had failed to satisfy her burden of establishing by clear and convincing evidence that the transfer of

---

[3] *In re the Estate of Dora J. Ellis*, Monterey County Superior Court, case Nos. MP16152 and MP16195.

[4] In the probate proceeding, both Weingarten and his paralegal, Anne Fingold, testified that Osornio accompanied Ellis to Weingarten's office on September 19, 2001. Fingold testified further that "it appeared to her that Ms. Ellis was dependent on her caretaker, Ms. Osornio."

[5] The tentative decision directed that counsel for Williams prepare a statement of decision consistent with the court's ruling. The parties have not provided us with any pleadings reflecting that the decision of the probate court is final. This fact notwithstanding, the arguments on appeal strongly suggest that both parties believe that the probate court has rendered a final decision adverse to Osornio. Therefore, any potential lack of finality of the probate court's decision is of no consequence to our consideration of the issues in this appeal.

property to Osornio in the 2001 Will was not the product of fraud, menace, duress, or undue influence, as provided in section 21351, subdivision (d) (hereafter section 21351(d)).[6]

## PROCEDURAL HISTORY

Osornio filed her complaint on May 20, 2003. Weingarten filed a general and special demurrer to the complaint. Weingarten contended, inter alia, that the complaint (a) failed to state facts sufficient to constitute a cause of action, (b) was uncertain, and (c) contained allegations that were heard and decided previously by the court. Osornio opposed the demurrer. After hearing, on December 3, 2003, the trial court sustained the general demurrer without leave to amend. The court entered a judgment of dismissal nunc pro tunc as of March 1, 2004.

Osornio filed a notice of appeal from the judgment on March 12, 2004. The appeal from the judgment was filed timely (Cal. Rules of Court, rule 2(a)(1)) and is a proper subject for appellate review. (Code Civ. Proc., § 904.1, subd. (a)(1); *Castro v. State of California* (1977) 70 Cal.App.3d 156, 158 [138 Cal.Rptr. 572].)

## DISCUSSION

### I. *Standard of Review*

■ A general demurrer is appropriate where the complaint "does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) ■ There are "long-settled rules" that appellate courts follow in addressing the merits of a challenge to a complaint by demurrer: " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court abused its discretion and we reverse; if

---

[6] The actual finding of the probate court was: "Osornio has failed to satisfy her burden of rebutting the presumption of undue influence created by Probate Code Section 21351(d). Viewing the evidence as a whole, the Court finds the evidence before the Court is not sufficiently 'clear and convincing' to overcome the presumption that the will executed by Ms. Eillis on September 19, 2001, leaving all her estate to her caretaker, was not [*sic*] a product of undue influence."

not, there is no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].)

■ A demurrer tests the sufficiency of the complaint as a matter of law; as such, it raises only a question of law. (See Code Civ. Proc., § 589; *Schmidt v. Foundation Health* (1995) 35 Cal.App.4th 1702, 1706 [42 Cal.Rptr.2d 172].) ■ On a question of law, we apply a de novo standard of review on appeal. (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 937 [29 Cal.Rptr.2d 669].) ■ While negligence is ordinarily a question of fact, the existence of duty is generally one of law. (*Meighan v. Shore* (1995) 34 Cal.App.4th 1025, 1033 [40 Cal.Rptr.2d 744] (*Meighan*); *Banerian v. O'Malley* (1974) 42 Cal.App.3d 604, 612–613 [116 Cal.Rptr. 919] (*Banerian*).) Thus, a demurrer to a negligence claim will properly lie only where the allegations of the complaint fail to disclose the existence of any legal duty owed by the defendant to the plaintiff. (*Banerian, supra,* at p. 613.)

II. *Issues on Appeal*

The single issue raised on appeal is whether the court erred in sustaining Weingarten's general demurrer without leave to amend. This order was apparently founded upon the conclusion that Weingarten as a matter of law owed no duty to Osornio, a nonclient.[7] The issue on appeal contains two subquestions: (a) whether the court properly sustained the demurrer because the complaint, as drafted, failed to state a cause of action for professional negligence; and (b) whether the court abused its discretion by refusing Osornio leave to amend—i.e., that the court correctly concluded that there was no reasonable possibility that Osornio could amend the complaint to state a viable cause of action.

We first review: sections 21350 and 21351, concerning the presumptive disqualification of certain donees (including care custodians of dependent

---

[7] In addition to contending that he owed no duty to Osornio, Weingarten argued below that her claim was barred by collateral estoppel; he asserted that the probate court's previous ruling against Osornio's petition to probate the 2001 Will barred the malpractice claim. Weingarten does not advance this collateral estoppel argument on appeal. We therefore deem the contention waived. (See *Jones v. Superior Court* (1994) 26 Cal.App.4th 92, 99 [31 Cal.Rptr.2d 264]: "Issues do not have a life of their own: if they are not raised or supported by argument or citation to authority, we consider the issues waived.") The claim of collateral estoppel, in any event, is patently without merit. (See *Garcia v. Borelli* (1982) 129 Cal.App.3d 24, 30–32 [180 Cal.Rptr. 768] (*Garcia*) [determination of right of heirship and distribution in probate court did not act as collateral estoppel to beneficiary's legal malpractice claim against testator's attorney].)

adults); the elements of a legal malpractice claim; the Supreme Court's decisions in *Biakanja v. Irving* (1958) 49 Cal.2d 647 [320 P.2d 16] (*Biakanja*), and *Lucas, supra*, 56 Cal.2d 583, the latter case having extended negligence claims to persons not in privity with attorneys in limited instances; and other California authorities addressing an attorney's duty of care to nonclients. Following this review, we address whether the trial court erred in sustaining Weingarten's demurrer, and whether it abused its discretion by denying Osornio leave to amend her complaint.

III. *Probate Code Sections 21350 and 21351*

■ Section 21350, subdivision (a) (hereafter, section 21350(a)), reads in relevant part: "Except as provided in Section 21351 [governing exceptions], no provision, or provisions, of any instrument shall be valid to make any donative transfer to any of the following: [¶] . . . [¶] (6) A care custodian of a dependent adult who is the transferor."[8] A "disqualified person" under the statute "means a person specified in subdivision (a) of Section 21350, but only in cases where Section 21351 does not apply." (§ 21350.5.) Other presumptively disqualified donees under section 21350(a), include: the drafter of the instrument;[9] the drafter's relative, domestic partner, cohabitant, or employee; the drafter's law partner or shareholder; an employee of the law partnership or corporation in which the drafter has an interest; one having a fiduciary relationship with the donor (including a conservator or trustee), who transcribes or causes the instrument to be transcribed; such fiduciary's relative, employee, domestic partner, or cohabitant; and a relative of, domestic partner of, employee of, or a cohabitant with, a care custodian of the donor who is a dependent adult. (§ 21350(a).)

■ The presumption of invalidity of donative transfers to specified individuals under section 21350(a)—including transfers to care custodians of dependent adults—does not apply, inter alia, where "[t]he instrument is reviewed by an independent attorney who (1) counsels the client (transferor) about the nature and consequences of the intended transfer, (2) attempts to determine if the intended consequence is the result of fraud, menace, duress, or undue influence, and (3) signs and delivers to the transferor an original

---

[8] The statute defines the terms "dependent adult" and "care custodian" as follows: "For purposes of this section, the term 'dependent adult' has the meaning as set forth in Section 15610.23 of the Welfare and Institutions Code and also includes those persons who (1) are older than age 64 and (2) would be dependent adults, within the meaning of Section 15610.23, if they were between the ages of 18 and 64. The term 'care custodian' has the meaning as set forth in Section 15610.17 of the Welfare and Institutions Code." (§ 21350, subd. (c).) As noted in our recitation of facts (pt. II, *ante*) Osornio has admitted that she was a care custodian of Ellis, a dependent adult.

[9] " 'Instrument' is broadly defined in [Probate Code] section 45 as 'a will, trust, deed, or other writing that designates a beneficiary or makes a donative transfer of property.' " (*Rice v. Clark* (2002) 28 Cal.4th 89, 97, fn. 4 [120 Cal.Rptr.2d 522, 47 P.3d 300].)

certificate . . . with a copy delivered to the drafter." (§ 21351(b).)[10] This "Certificate of Independent Review" must state that the attorney: reviewed the instrument; counseled the client/transferor concerning the nature and consequences of the subject transfer of property to the presumptively disqualified person under section 21350; was disassociated from any interest in the transferee; and concluded that the transfer to the presumptively disqualified person was valid because it was "not the product of fraud, menace, duress, or undue influence." (§ 21351(b).)

■ Presumptively disqualified donees under section 21350(a)—even without the transferor having obtained a certificate of independent review under section 21351(b)—may rebut this presumption under very limited circumstances, where "[t]he court determines, *upon clear and convincing evidence*, but not based solely upon the testimony of any person described in subdivision (a) of Section 21350, that the transfer was not the product of fraud, menace, duress, or undue influence." (§ 21351(d), italics added.)[11] This "elevated proof burden" (*Rice v. Clark, supra*, 28 Cal.4th at p. 98) requires the proposed donee to "persuade [the trier of fact] that it is highly probable that the fact is true." (Judicial Council of Cal., Civil Jury Instns. (2003–2004) CACI No. 201; see also former BAJI No. 2.62 (2004 ed.); *In re Asia L.* (2003) 107 Cal.App.4th 498, 510 [132 Cal.Rptr.2d 733] ["evidence must be so clear as to leave no substantial doubt"].)[12] Furthermore, in such proceeding, if the proposed donee fails to meet this heightened burden of proving that the transfer was not the product of fraud, menace, duress, or undue influence, he or she "shall bear all costs of the proceeding, including reasonable attorney's fees." (§ 21351(d).) These costs in many instances will be substantial. (See *Estate of Shinkle* (2002) 97 Cal.App.4th 990, 1001, fn. 2 [119 Cal.Rptr.2d 42] [care custodian/beneficiary, after being determined a disqualified donee under section 21350(a), ordered to pay over $114,000 in costs and attorney's fees].)

The intent of section 21350 was "to prevent unscrupulous persons in fiduciary relationships from obtaining gifts from elderly persons through undue influence or other overbearing behavior. [Citation.]" (*Bank of*

---

[10] Although not relevant to the issues on appeal, other instances in which donative transfers to persons identified in section 21350(a) are not presumed invalid are: where the transferee or the drafter is the transferor's relative, cohabitant, or registered domestic partner (§ 21351, subd. (a)); or where, "[a]fter full disclosure of the relationships of the persons involved, the instrument is approved" by the court in a special proceeding. (§ 21351, subd. (c).)

[11] This option, however, is not available to the *drafter* of the instrument, where the transferor has failed to obtain a certificate under section 21351(b). (§ 21351, subd. (e)(1).)

[12] This placement of the burden of proof upon the proponent of the instrument is, in effect, the converse of the typical will contest, where the contestant bears the burden of proving a basis to invalidate the instrument. (See § 8252, subd. (a); *Graham v. Lenzi* (1995) 37 Cal.App.4th 248, 255, fn. 5, 256 [43 Cal.Rptr.2d 407].)

*America v. Angel View Crippled Children's Foundation* (1999) 72 Cal.App.4th 451, 456 [85 Cal.Rptr.2d 117].) The statute arose in response to reports of significant abuse of the attorney-client relationship by an attorney in Southern California who, inter alia, "reportedly drafted wills and trusts for thousands of elderly clients, naming himself as beneficiary. [Citations.]" (*Estate of Swetmann* (2000) 85 Cal.App.4th 807, 819, fn. 9 [102 Cal.Rptr.2d 457]; see also *Rice v. Clark, supra,* 28 Cal.4th at p. 97.)[13]

As originally enacted in 1993, section 21350(a) did not include care custodians of dependent adults among the class of presumptively disqualified donees. (See former § 21350, added by Stats. 1993, ch. 293, § 8, p. 2021.) In 1997, the Legislature amended section 21350(a) to include care custodians of dependent adults as presumptively disqualified donees. (See Stats. 1997, ch. 724, § 33; see also *Conservatorship of Davidson* (2003) 113 Cal.App.4th 1035, 1050 [6 Cal.Rptr.3d 702] [1997 amendment to section 21350 "was intended to apply to gifts made 'to practical nurses or other caregivers hired to provide in-home care.' [Citation.]"].)

IV. *Required Elements of a Professional Negligence Claim*

■ In evaluating the sufficiency of Osornio's complaint, we note preliminarily that there are four essential elements of a professional negligence claim: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence. [Citations.]" (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433]; see also *Ishmael v. Millington* (1966) 241 Cal.App.2d 520, 523 [50 Cal.Rptr. 592].)

■ A legal malpractice action is thus composed of the same elements as any other negligence claim, i.e., "duty, breach of duty, proximate cause, and damage. [Citation.]" (*Chavez v. Carter* (1967) 256 Cal.App.2d 577, 579 [64 Cal.Rptr. 350], disapproved on another ground in *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 190, fn. 29 [98 Cal.Rptr. 837, 491 P.2d 421].) While other elements of a legal malpractice claim are generally factual and thus cannot be challenged on demurrer, the existence of the attorney's duty of care owing to the plaintiff is generally a question of law that may be addressed by demurrer. (*Goodman v. Kennedy* (1976) 18

---

[13] "The primary purpose of [Assembly Bill No.] 21 [which, inter alia, added sections 21350 to 21355 of the Probate Code] is to strictly forbid attorneys from drafting (or causing to be drafted) wills that leave themselves, or relatives or business partners, gifts of more than insubstantial value, i.e., $500." (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 21 (1993–1994 Reg. Sess.) as amended Feb. 4, 1993, p. 3.)

Cal.3d 335, 342 [134 Cal.Rptr. 375, 556 P.2d 737] (*Goodman*); *Banerian*, *supra*, 42 Cal.App.3d 604, 612–613.)

## V. *The* Biakanja *and* Lucas *Decisions*

We start with the undisputed proposition that, in California, "[a]n attorney's liability for professional negligence does not ordinarily extend beyond the client except in limited circumstances." (*St. Paul Title Co. v. Meier* (1986) 181 Cal.App.3d 948, 950 [226 Cal.Rptr. 538]; see also Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2004) ¶ 6:240, p. 6-38 [attorney generally has no professional obligation to nonclient].) The Supreme Court very recently reiterated that "the general rule [is] that an attorney owes a duty of care, and is thus answerable in malpractice, only to the client with whom the attorney stands in privity of contract. [Citation.]" (*Borissoff v. Taylor & Faust* (2004) 33 Cal.4th 523, 530 [15 Cal.Rptr.3d 735, 93 P.3d 337].) Indeed, until 1958, California followed the traditional view that a nonclient could not maintain an action against an attorney for malpractice.[14] Thus, under former California law, a named beneficiary who was damaged as a result of the negligence of the attorney who drafted the will could not recover, due to the absence of any duty owed by the attorney to the nonclient/intended beneficiary. (See *Buckley v. Gray* (1895) 110 Cal. 339 [42 P. 900] (*Buckley*).)

In *Biakanja*, *supra*, 49 Cal.2d 647, the Supreme Court disapproved of *Buckley's* strict privity requirement. A will failed in *Biakanja* because, although notarized, its execution was not properly witnessed. (*Biakanja*, *supra*, 49 Cal.2d at p. 648.) The beneficiary under the failed will sued the notary public, who—engaging in the unauthorized practice of law—negligently drafted and supervised the will's execution. (*Ibid.*) The court held that a defendant's liability to a third person not in privity in a particular case "is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm. [Citations.]" (*Id.* at p. 650.) Applying these factors, the Supreme Court concluded that the notary owed a duty of care to the beneficiary, even in the absence of privity. (*Id.* at pp. 650–651.)

---

[14] For extensive reviews of multijurisdictional authorities on an attorney's duty to third parties, see generally, Annot., What Constitutes Negligence Sufficient to Render Attorney Liable to Person Other than Immediate Client (1988) 61 A.L.R.4th 464; Annot., Attorney's Liability, to One Other than Immediate Client, for Negligence in Connection with Legal Duties (1988) 61 A.L.R.4th 615.

 In *Lucas, supra,* 56 Cal.2d 583, the Supreme Court faced a similar question of duty to intended beneficiaries, but in the context of an attorney's negligence. The beneficiaries sued the attorney who drafted the will and codicils in a manner that caused the instruments to fail because they ran afoul of statutory restraints on alienation and the rule against perpetuities. (*Id.* at pp. 586–587.) After noting that it had previously rejected *Buckley*'s "stringent privity test" in *Biakanja* (*Lucas, supra,* at p. 588), the court held that "intended beneficiaries of a will who lose their testamentary rights because of failure of the attorney who drew the will to properly fulfill his obligations under his contract with the testator may recover as third-party beneficiaries." (*Id.* at p. 591.)

 In so concluding, the court utilized the balancing test it enunciated previously in *Biakanja* to determine whether the attorney defendant owed a duty to the beneficiaries with whom defendant was not in privity. (*Lucas, supra,* 56 Cal.2d at p. 588.)[15] The court added a factor not present in its discussion in *Biakanja,* namely, "whether the recognition of liability to beneficiaries of wills negligently drawn by attorneys would impose an undue burden on the profession." (*Lucas, supra,* 56 Cal.2d at p. 589.)[16]

The court determined that the first factor strongly favored the plaintiffs, since "one of the main purposes which the transaction between defendant and the testator intended to accomplish was to provide for the transfer of property to plaintiffs." (*Lucas, supra,* 56 Cal.2d at p. 589.) It likewise concluded that it was foreseeable that plaintiffs would be harmed if the bequest was determined to be invalid, that the harm would not occur but for defendant's negligence, and that the harm would become certain upon the testator's death. (*Ibid.*) The court also held that denying recovery to plaintiffs/intended

---

[15] The Supreme Court in *Lucas* actually recited only five of the six *Biakanja* factors, omitting factor number 5 quoted above, i.e., "the moral blame attached to the defendant's conduct." (*Lucas, supra,* 56 Cal.2d at p. 588; see also 1 Mallen & Smith, Legal Malpractice (5th ed. 2000) Liability to Nonclient—Negligence, § 7.8, p. 694 [identifying criteria considered in California as consisting of six factors—five *Biakanja* factors, excluding "moral blame" factor, and the *Lucas* factor of "burden on the profession"].) Our conclusion from a review of the California cases addressing the issue of an attorney's duty to third parties is that courts often recite this "moral blame" factor mentioned in *Biakanja* but rarely apply it as a part of their analysis. (See, e.g., *Goodman, supra,* 18 Cal.3d 335, 343; *Heyer v. Flaig* (1969) 70 Cal.2d 223, 227 [74 Cal.Rptr. 225, 449 P.2d 161] (*Heyer*), disapproved on other grounds in *Laird v. Blacker* (1992) 2 Cal.4th 606, 617 [7 Cal.Rptr.2d 550, 828 P.2d 691]; *Morales v. Field, DeGoff, Huppert & MacGowan* (1979) 99 Cal.App.3d 307, 315 [160 Cal.Rptr. 239] (*Morales*).)

[16] The Supreme Court later enunciated another factor to consider in determining the existence of duty—a factor related to the question of "undue burden on the profession," namely, whether imposing liability would impinge upon the attorney's ethical duties to his or her client. (See *Goodman, supra,* 18 Cal.3d at p. 344; see also *Moore v. Anderson Zeigler Disharoon Gallagher & Gray* (2003) 109 Cal.App.4th 1287, 1295 [135 Cal.Rptr.2d 888] (*Moore*).)

beneficiaries under these circumstances would impair the policy of preventing future harm: "[I]f persons such as plaintiffs are not permitted to recover for the loss resulting from negligence of the draftsman, no one would be able to do so and the policy of preventing future harm would be impaired." (*Ibid.*) Finally, it concluded that the imposition of liability under these circumstances "does not place an undue burden on the profession, particularly when we take into consideration that a contrary conclusion would cause the innocent beneficiary to bear the loss." (*Ibid.*)[17]

## VI. *Decisions Subsequent to* Lucas

In the near half-century since the Supreme Court decided *Lucas*, California courts have considered numerous variations of the attorney's potential liability to nonclients. Some instances have involved an attorney's duty of care in the estate planning context, while others have addressed negligence claims by nonclients in other business settings. In order to address fully the parties' respective contentions herein, we first review these California decisions.

### A. *Estate Planning Cases*

In *Heyer, supra*, 70 Cal.2d 223, the Supreme Court addressed a legal malpractice claim brought by intended beneficiaries of a will. The two daughters of the testator—who were the sole beneficiaries—claimed that the attorney negligently failed to advise the mother that omitting a provision in the will concerning her intended marriage could result in the spouse asserting a claim to a portion of her estate in the event she predeceased him, under former section 70. (*Heyer, supra*, 70 Cal.2d at pp. 225–226.)[18]

▉▉▉ Before addressing the central question before it (i.e., commencement of the statute of limitations), the *Heyer* court reiterated its holdings in *Biakanja* and *Lucas* that permitted, as a matter of policy, intended beneficiaries to recover in the absence of privity with the defendant: "When an attorney undertakes to fulfill the testamentary instructions of his client, he

---

[17] Somewhat ironically, the Supreme Court—despite announcing that the intended beneficiaries had the *theoretical* right to recover against the attorney—ultimately rejected plaintiffs' claims. It concluded that, because of uncertainties in the law regarding the rule against perpetuities and restraints on alienation, "it would not be proper to hold that defendant failed to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly exercise." (*Lucas, supra*, 56 Cal.2d at p. 592.)

[18] Former section 70, which was repealed effective 1985 (Stats. 1983, ch. 842, § 18, p. 3024), provided as follows: "If a person marries after making a will, and the spouse survives the maker, the will is revoked as to the spouse, unless . . . the spouse is provided for in the will, or in such way mentioned therein as to show an intention not to make such provision; and no other evidence to rebut the presumption of revocation can be received." (Stats. 1931, ch. 281, § 70, p. 590; see also §§ 6560 to 6562.)

realistically and in fact assumes a relationship not only with the client but also with the client's intended beneficiaries. The attorney's actions and omissions will affect the success of the client's [testamentary] scheme; and thus the possibility of thwarting the testator's wishes immediately becomes foreseeable. Equally foreseeable is the possibility of injury to an intended beneficiary. In some ways, the beneficiary's interests loom greater than those of the client. After the latter's death, a failure in his testamentary scheme works no practical effect except to deprive his intended beneficiaries of the intended bequests . . . only the beneficiaries suffer the real loss. We recognized in *Lucas* that unless the beneficiary could recover against the attorney in such a case, no one could do so and the social policy of preventing future harm would be frustrated." (*Heyer, supra,* 70 Cal.2d at p. 228.)[19] Applying *Lucas*, the court concluded that "[a] reasonably prudent attorney should appreciate the consequences of a post-testamentary marriage, advise the testator of such consequences, and use good judgment to avoid them if the testator so desires." (*Heyer, supra,* 70 Cal.2d at p. 229.)

Similarly, an attorney was held to owe a duty of care to intended beneficiaries to properly advise the testator of the law governing the property he intended to dispose of through his will. (See *Garcia, supra,* 129 Cal.App.3d 24.) The testator told his attorney that certain property in which he had a community property interest, as a matter of convenience, was held by his wife and him in joint tenancy. (*Id.* at p. 27.) After the testator's death, his widow "terminated all joint tenancies in her favor, thus depriving the estate, and ultimately [plaintiffs], of Testator's community interest in this property." (*Id.* at p. 28.) The plaintiffs alleged that the attorney was negligent, inter alia, in failing to advise the testator of legal presumptions governing title to his property and in failing to advise him of potential estate planning measures to ensure that his property would receive proper recognition upon his death. (*Id.* at p. 29.) While the appellate court focused mainly on a collateral estoppel issue,[20] it concluded that the plaintiffs alleged a viable theory of recovery against the testator's attorney. (*Id.* at p. 32.)

An estate planning attorney's duty of care to nonclients, under *Lucas* and *Heyer*, was extended to trust beneficiaries in *Bucquet v. Livingston* (1976) 57 Cal.App.3d 914 [129 Cal.Rptr. 514] (*Bucquet*). In that case, the beneficiaries under an inter vivos trust claimed that the attorney for the trustors (husband and wife) negligently drafted the trust; he allegedly failed to advise the trustors of potential tax consequences resulting from including a general

---

[19] The Supreme Court also noted that, while it held in *Lucas* that the intended beneficiary under a will could bring suit against the testator's attorney under both a theory of negligence and under a contractual theory of third party beneficiary, "[t]his latter theory of recovery, however, is conceptually superfluous since the crux of the action must lie in tort in any case; there can be no recovery without negligence." (*Heyer, supra,* 70 Cal.2d at p. 227.)

[20] See footnote 7, *ante.*

power of appointment in the trust. (*Id.* at p. 917.) The beneficiaries claimed that this negligence resulted in the wife's estate incurring unnecessary tax liability, which, in turn, reduced the share of the trust ultimately received by the beneficiaries. (*Id.* at p. 920.) The court held that the principles of *Lucas* and *Heyer* "are equally applicable to *inter vivos* trusts, like the instrument here in issue, as there is no rational basis for any distinction." (*Bucquet, supra,* at p. 922.)[21] It concluded that the complaint stated a cause of action, because the creation of the trust "was directly intended to affect the beneficiaries and the avoidance of federal estate tax and state inheritance tax was directly related to the amounts that [husband] intended the beneficiaries to receive after [wife's] death." (*Bucquet,* at p. 923.)

Several cases have rejected unwarranted extensions of *Lucas/Heyer* in other estate planning contexts. In *Ventura County Humane Society v. Holloway* (1974) 40 Cal.App.3d 897 [115 Cal.Rptr. 464] (*Ventura*), the court rejected a malpractice claim by a class of potential beneficiaries (charities). They alleged that, as a result of the attorney's negligence, they were unable to take under the testator's will because the bequest—although containing the name selected by the testator—did not have a properly named beneficiary. (*Id.* at p. 901.)[22] The court refused to extend *Lucas*, holding that "no good reason exists why the attorney should be held accountable for using certain words suggested or selected by the testator which later prove to be ambiguous. . . . The duty thus created would amount to a requirement to draft litigation-proof legal documents. This unlimited liability . . . would result in a speculative and almost intolerable burden on the legal profession indeed." (*Ventura, supra,* at p. 905.)

Likewise, we rejected the malpractice claim of a *potential* beneficiary identified in an *unsigned* will. (See *Radovich v. Locke-Paddon* (1995) 35 Cal.App.4th 946 [41 Cal.Rptr.2d 573] (*Radovich*).) There, the attorney prepared a draft will—which made specific bequests to plaintiff and named him as an income beneficiary under a charitable remainder trust—and delivered it to the testator. (*Id.* at p. 952.) Approximately two months after the attorney delivered the draft will, the testator died without having executed it. (*Ibid.*) Plaintiff asserted, inter alia, that the executor's counsel was negligent in failing to obtain the testator's signature on the will. (*Id.* at p. 953.)

We refused to expand the attorney's duty to nonclients under *Lucas/Heyer* to a potential beneficiary under an unsigned draft will. (*Radovich, supra,* 35

---

[21] See also *Morales, supra,* 99 Cal.App.3d 307 (counsel for trustee/executor owed duty to unrepresented remainderman beneficiary to disclose attorney's dual representation of parties in transaction involving trust).

[22] The will provided that 25 percent of the residuary estate would go to the " 'Society for the Prevention of Cruelty to Animals (Local or National),' " an entity that, as named, did not exist. (*Ventura, supra,* 40 Cal.App.3d at p. 901.)

Cal.App.4th at pp. 965–966.)[23] In so concluding, we noted that most of the *Biakanja* factors did not suggest the imposition of duty (*Radovich, supra,* 35 Cal.App.4th at pp. 963–965), and "that imposition of liability in a case such as this could improperly compromise an attorney's primary duty of undivided loyalty to his or her client, the decedent." (*Id.* at p. 965; see also *Goldberg v. Frye* (1990) 217 Cal.App.3d 1258 [266 Cal.Rptr. 483] [rejecting legatees' negligence claim against attorney for administrator, holding that principal purpose of attorney's engagement was to counsel fiduciary and not to benefit legatees, and attorney owed duty to administrator only].)

In a recent case, the First Appellate District, Division Two, similarly refused to extend an attorney's duty to a nonclient in the estate planning context. (See *Moore, supra,* 109 Cal.App.4th 1287.) In *Moore,* the testator's children alleged that the attorney who had drafted amendments to their father's estate plan, which reduced the children's share, was negligent in failing to ascertain his client's testamentary capacity. (*Id.* at p. 1290.) The children alleged that as a result of the attorney's failure to determine their father's testamentary capacity and to document that evaluation, they received less through their settlement of ensuing estate litigation than they would have received under their father's estate plan prior to execution of the questioned amendments. (*Ibid.*)

After extensive review of the relevant authorities and discussion of the *Biakanja/Lucas* factors, the court held that the testator's attorney owed no such duty to the beneficiaries. (*Moore, supra,* 109 Cal.App.4th at p. 1307.) The court concluded: "It may be that prudent counsel should refrain from drafting a will for a client the attorney reasonably believes lacks testamentary capacity or should take steps to preserve evidence regarding the client's capacity in a borderline case. However, that is a far cry from imposing malpractice liability to nonclient potential beneficiaries for the attorney's alleged inadequate investigation of evaluation of capacity or the failure to sufficiently document that investigation." (*Ibid.*)

Weingarten relies heavily on *Radovich* and *Moore* in support of his assertion that he owed no duty to Osornio as a matter of law. As we discuss in detail, (see pt. VIII C, *post*), neither case supports Weingarten's position. In *Radovich,* plaintiff was merely a *potential* beneficiary under an *unsigned* draft will. We rejected his claim against the attorney who drafted the

---

[23] Another appellate court rejected a negligence claim under which the plaintiff asserted that he was deprived of a bequest that he would have otherwise received had the testator's attorney not prepared a subsequent will that was validly executed. (See *Hiemstra v. Huston* (1970) 12 Cal.App.3d 1043, 1048 [91 Cal.Rptr. 269] [case—unlike *Biakanja, Lucas,* or *Heyer*—involved a valid will that "contained no legal deficiency which prevented [testator's] wishes expressed therein from being carried out"].)

unsigned will, based in large part upon our concern that imposing liability would undermine the attorney's duty of loyalty to the client, (*Radovich*, *supra*, 35 Cal.App.4th at p. 965), a circumstance not presented here. Likewise, the appellate court in *Moore* concluded that requiring an attorney to ascertain and document his or her client's testamentary capacity "would place an intolerable burden on attorneys [because n]ot only would the attorney be subject to potentially conflicting duties to the client and to potential beneficiaries, but counsel also could be subject to conflicting duties to different sets of beneficiaries." (*Moore*, *supra*, 109 Cal.App.4th at p. 1299.) As we discuss, *post*, no such problem of conflicting loyalties arises here; imposing a duty upon Weingarten under the circumstances presented promotes the objectives of the client to transfer the client's estate to the nonclient/beneficiary.

### B. *Malpractice Cases by Nonclients in Other Settings*

Several California decisions have followed *Lucas* in finding a duty of care owed by the attorney to a nonclient outside of the estate planning context. One appellate court extended *Lucas* to a nonclient who made a loan to the attorney's client. (See *Roberts v. Ball, Hunt, Hart, Brown & Baerwitz* (1976) 57 Cal.App.3d 104 [128 Cal.Rptr. 901].) In *Roberts*, the plaintiff/lender alleged that he relied upon the attorney's letter opining that the client was a duly organized general partnership. (*Id.* at p. 107.) The appellate court held that the attorney owed a duty to plaintiff, and thus concluded that plaintiff stated a cause of action for negligent misrepresentation: "[T]he issuance of a legal opinion intended to secure benefit for the client . . . must be issued with due care, or the attorneys who do not act carefully will have breached a duty owed to those they attempted or expected to influence on behalf of their clients." (*Id.* at p. 111; see also *Courtney v. Waring* (1987) 191 Cal.App.3d 1434, 1443–1444 [237 Cal.Rptr. 233] [franchisor's attorneys who prepared misleading prospectus held liable to franchisees].)

In *Meighan*, *supra*, 34 Cal.App.4th 1025, the attorney failed to advise the client's wife of the existence of a loss of consortium claim arising out of the client's injuries, and the couple did not learn of the existence of such claim until after the statute of limitations had run. (*Id.* at pp. 1029–1030.) The court, applying the six-part analysis under *Biakanja* and *Lucas*, concluded that the attorney owed the couple—client and nonclient alike—a duty to inform them "of the existence of their rights under the consortium tort." (*Meighan*, *supra*, 34 Cal.App.4th at p. 1044; see also *Donald v. Garry* (1971) 19 Cal.App.3d 769, 772 [97 Cal.Rptr. 191] [attorney for collection agent who brought suit on obligation owed duty to creditor/assignor of claim to prosecute action diligently].)

Other cases, however, have rejected attorney negligence claims brought by nonclients. For instance, in *Goodman*, *supra*, 18 Cal.3d 335, the plaintiffs

alleged that they were damaged as a result of negligent advice given by the attorney to his clients concerning the issuance of stock. Plaintiffs ultimately purchased the stock from the clients; the sale was alleged to have violated certain securities laws, the result of which was that the stock purchased by plaintiffs was ultimately rendered valueless. (*Id.* at pp. 341–342.)

The Supreme Court rejected the negligence claim, concluding that the attorney had no relationship with the plaintiffs from which a duty of care arose. (*Goodman, supra,* 18 Cal.3d at pp. 343–344.) It noted that the advice was neither communicated to plaintiffs, nor was it given to enable the clients to satisfy any obligations to the plaintiffs. (*Id.* at p. 343.) The complaint did not allege "that plaintiffs had any relationship to defendant's clients or to the corporation as stockholders or otherwise when the advice was given." (*Id.* at p. 344.) The court also reasoned that plaintiffs were not parties upon whom the clients intended to confer a benefit when defendant provided the advice; they were only "parties with whom defendant's clients might negotiate a bargain at arm's length." (*Ibid.*) Moreover, the court concluded that a finding of duty under the circumstances presented would impose " 'an undue burden on the profession' [citation] and a diminution in the quality of legal services received by the client. [Citation.]" (*Ibid.,* fn. omitted.)[24]

---

[24] In various contexts, California appellate courts have similarly held—after balancing the *Biakanja/Lucas* factors—that the attorney owed no duty of care to a nonclient. (See, e.g., *Mattco Forge, Inc. v. Arthur Young & Co.* (1995) 38 Cal.App.4th 1337, 1355–1357 [45 Cal.Rptr.2d 581] [attorney not liable to accounting firm hired as expert witness for attorney's client]; *Skarbrevik v. Cohen, England & Whitfield* (1991) 231 Cal.App.3d 692, 706–707 [282 Cal.Rptr. 627] [attorney for close corporation owed no duty of care to minority shareholder]; *Burger v. Pond* (1990) 224 Cal.App.3d 597, 606 [273 Cal.Rptr. 709] [no liability to future wife of client for alleged negligence in handling of client's divorce from first wife]; *Sooy v. Peter* (1990) 220 Cal.App.3d 1305, 1313–1314 [270 Cal.Rptr. 151] [attorney for junior lienholder not liable to counsel for third party (senior lienholder)]; *Schick v. Lerner* (1987) 193 Cal.App.3d 1321, 1331 [238 Cal.Rptr. 902] [attorney advising psychologist not liable to psychologist's patient]; *Fox v. Pollack* (1986) 181 Cal.App.3d 954, 961–962 [226 Cal.Rptr. 532] [attorney not liable for negligence to unrepresented party in attorney's handling of real estate transaction for his client]; *St. Paul Title Co. v. Meier, supra,* 181 Cal.App.3d 948, 952 [attorney for purchaser of real estate not liable to escrow agent]; *Mason v. Levy & Van Bourg* (1978) 77 Cal.App.3d 60, 67–68 [143 Cal.Rptr. 389] [attorney not liable to referring attorney for former attorney's negligence in failing to properly prosecute case under contingency referral agreement]; *Held v. Arant* (1977) 67 Cal.App.3d 748, 751 [134 Cal.Rptr. 422] [second attorney for client not liable for indemnity to first attorney sued by client for legal malpractice]; *Norton v. Hines* (1975) 49 Cal.App.3d 917, 921 [123 Cal.Rptr. 237] [attorney not liable to adverse party in litigation]; *National Auto. & Cas. Ins. Co. v. Atkins* (1975) 45 Cal.App.3d 562, 564–565 [119 Cal.Rptr. 618] [attorney who obtained an attachment and attachment bonds in prior action owed no duty to insurance company that issued the attachment bonds to prosecute action diligently]; *De Luca v. Whatley* (1974) 42 Cal.App.3d 574, 575–576 [117 Cal.Rptr. 63] [attorney not liable for calling nonclient to testify as witness in client's criminal proceeding, even where witness thereby incriminated himself]; *Haldane v. Freedman* (1962) 204 Cal.App.2d 475, 478–480 [22 Cal.Rptr. 445] [attorney representing mother in divorce proceeding not liable to children].)

It is against the foregoing backdrop of California decisions concerning questions of the attorney's duty to nonclients that we now address the question on appeal. We first consider whether the complaint, on its face, stated a cause of action for professional negligence. We then discuss whether the court properly denied Osornio leave to amend her complaint.

### VII. *Sufficiency of the Osornio Complaint*

As discussed above, the four elements of a legal malpractice claim are: "duty, breach of duty, proximate cause, and damage." (*Chavez v. Carter, supra,* 256 Cal.App.2d 577, 579.) It is not disputed that Osornio properly pleaded the latter three elements of negligence. The sole question—viewing only the four corners of the pleading—is whether the complaint alleged that Weingarten owed a legal duty to Osornio.

The complaint alleged that the 2001 Will "failed to include a Certificate of Independent Review as required by California Probate Code Section 21350 et seq." Osornio claimed in the next sentence of the complaint that, "[a]s such, Defendants failed to exercise reasonable care and skill" in representing Ellis. The complaint alleged that Osornio "was the intended sole beneficiary of the Estate of Dora Ellis," and that Osornio would have inherited the entirety of the Ellis estate, but for Weingarten's negligence in preparing the 2001 Will.

We may consider in connection with Weingarten's demurrer "any matter that is judicially noticeable under Evidence Code section 451 or 452. [Citation.]" (*Cryolife, Inc. v. Superior Court, supra,* 110 Cal.App.4th 1145, 1152, citing Code Civ. Proc., § 430.30, subd. (a).) California statutes are, of course, matters of which judicial notice *shall* be taken. (Evid. Code, § 451, subd. (a).) Thus, a complaint, while facially adequate, may fail to state a cause of action by referring to matters upon which judicial notice may be taken. (*Childs v. State of California* (1983) 144 Cal.App.3d 155, 159 [192 Cal.Rptr. 526].)

We readily conclude that the complaint failed to allege that Weingarten owed a duty of care to nonclient Osornio. Even assuming, arguendo, that the bare bones allegations of duty are facially sufficient, any claim of duty is directly refuted by sections 21350 and 21351, of which we take judicial notice. (See Evid. Code, § 451, subd. (a).) As we have seen, a certificate of independent review is a document that is signed by independent counsel representing the transferor, who then "delivers to the transferor [the] original certificate . . . with a copy delivered to the drafter." (§ 21351(b).) Contrary to the allegations of Osornio's complaint, the certificate is not "included" in the testamentary instrument. Similarly, contrary to the implication in Osornio's pleading, the drafter of the instrument is not the person who *supplies* the certificate as part of his or her duties to the transferor.

We therefore conclude that the trial court properly held that Osornio's complaint was subject to demurrer because of the failure to allege a legal duty on the part of Weingarten.

## VIII. *Whether Osornio Should Have Been Granted Leave to Amend*

### A. *Allegations of Proposed Amended Complaint*

In determining whether the court should have granted leave to amend, we disregard Osornio's inartful pleading and examine whether there was a reasonable possibility that she could have amended her complaint to state a claim for legal malpractice. (See *Blank v. Kirwan, supra*, 39 Cal.3d 311, 318; *Okun v. Superior Court* (1981) 29 Cal.3d 442, 460 [175 Cal.Rptr. 157, 629 P.2d 1369].) This requires us to first enunciate—as it appears from the opposition to demurrer and appellate briefs—Osornio's *unpleaded* theory of negligence.

Irrespective of the wording of the complaint, it is readily apparent that Osornio *could have alleged* that Weingarten breached a duty of care owed to her: Weingarten negligently failed to advise Ellis that the intended beneficiary under her 2001 Will, Osornio, would be presumptively disqualified because of her relationship as Ellis's care custodian.[25] Under this theory, Weingarten was negligent not only by failing to advise Ellis of the consequences of section 21350(a); he was also negligent in failing to address Osornio's presumptive disqualification by making arrangements to refer Ellis to independent counsel to advise her and to provide a Certificate of Independent Review required by section 21351(b).[26]

Osornio could have alleged that, as a proximate result of this negligence, she—as third party beneficiary to Ellis's engagement of Weingarten to draft the 2001 Will—was damaged. The damage was Osornio's failure to inherit under the 2001 Will. Osornio could have alleged further that this failure to inherit occurred because: (a) there was no certificate of independent review concerning the proposed donative transfer to Osornio under the 2001 Will; (b) said certificate would have been obtained but for Weingarten's negligence in failing to advise Ellis and in failing to refer her to independent counsel; (c) absent this certificate, Osornio was required to prove by clear and

---

[25] As noted in our discussion of facts, *ante*, it is apparent that Weingarten knew at the time he drafted the 2001 Will that Osornio was, in fact, Ellis's care custodian.

[26] This theory is borne out by the probate court's tentative decision. The court noted that Weingarten testified that "he did not refer [Ellis] to an independent attorney to counsel her about the nature and consequences of the intended transfer [of her estate to Osornio] and did not obtain a Certificate of Independent Review in compliance with Probate Code Section 21351."

convincing evidence (disregarding her own testimony) that the transfer of the estate to her under the 2001 Will was *"not* the product of fraud, menace, duress, or undue influence" (§ 21351(d), italics added); and (d) she was unable to meet this high burden of overcoming the presumption that she was a disqualified person under section 21350(a).

Having framed the potential amended complaint in this fashion, we must now address whether this proposed pleading sufficiently alleges a legal duty owed by Weingarten to the nonclient, Osornio. If we answer this question in the negative, we must affirm the trial court. If, however, we answer the question in the affirmative, we must necessarily find that the court abused its discretion by sustaining Weingarten's demurrer without granting Osornio leave to amend.

### B. *Balancing of Six* Biakanja/Lucas *Factors*

Evaluating the existence of an attorney's duty to a nonclient as "a matter of policy" (*Lucas, supra,* 56 Cal.2d 583, 588), we must balance the six *Biakanja/Lucas* factors. To reiterate, these factors are: "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury . . . [5] the policy of preventing future harm" (*ibid.*), and [6] "whether the recognition of liability to beneficiaries of wills negligently drawn by attorneys would impose an undue burden on the profession." (*Id.* at p. 589.)[27]

### 1. *Transaction intended to affect plaintiff*

As we have seen from our discussion, *ante,* "[i]n the cases finding duties owed to nonclients, the nonclients were the intended beneficiaries of the attorney's work or were relying on that work or were to be influenced by it (and the attorney knew or should have known this). [Citation.]" (*Assurance Co. of America v. Haven* (1995) 32 Cal.App.4th 78, 91 [38 Cal.Rptr.2d 25].) In balancing the factors to resolve the question of duty, "[t]he predominant inquiry . . . is whether the principal purpose of the attorney's retention [was] to provide legal services for the benefit of the plaintiff." (*Goldberg v. Frye, supra,* 217 Cal.App.3d 1258, 1268; see also *Meighan, supra,* 34 Cal.App.4th

---

[27] As we indicate in footnote 15, *ante,* in determining an attorney's duty to a nonclient, courts have generally not addressed the additional *Biakanja* factor, namely, "the moral blame attached to the defendant's conduct." (*Biakanja, supra,* 49 Cal.2d 647, 650.) We agree that the "moral blame" factor is of limited usefulness in any analysis of duty. It suffices for us to say here that the balancing of the six relevant *Biakanja/Lucas* factors supports a finding that Weingarten owed a duty of care to Osornio.

1025, 1041 ["presence or absence of a client's intent that the plaintiff benefit from or rely upon the attorney's services is particularly significant in the determination of duty"]; 1 Mallen & Smith, Legal Malpractice, *supra*, § 7.8, pp. 701–702 ["predominant inquiry" is whether principal purpose of client's retention of attorney was to benefit third party].)

Unquestionably, this factor supports Osornio. Here, there is no doubt that "the 'end and aim' of the transaction [i.e., the drafting of the 2001 Will] was to provide for the passing" of Ellis's estate to Osornio. (*Biakanja*, *supra*, 49 Cal.2d at p. 650.) The engagement of Weingarten by Ellis was clearly intended to benefit Osornio. In this respect, the Supreme Court's analyses in *Biakanja*, *Lucas*, and *Heyer* directly apply.

### 2. *Foreseeability of harm to plaintiff*

We have no trouble concluding that this factor similarly supports Osornio. It was clearly foreseeable at the time Weingarten drafted the 2001 Will that, if he failed to exercise due care to effectuate the testamentary transfer that Ellis intended upon her death, Osornio would be damaged. Again, the circumstances the Supreme Court addressed in *Biakanja*, *Lucas*, and *Heyer* are indistinguishable from this case.

In addition, the 2001 Will was a revocation of Ellis's prior 1993 Will, under which another person, Williams, was beneficiary. This relevant fact increased the foreseeability of harm to Osornio in the event that there was no certificate of independent review of the 2001 Will. It concomitantly decreased the likelihood that Osornio would be able to meet her heavy burden (under § 21351(d)) of proving by clear and convincing evidence that the bequest was not the product of fraud, menace, duress, or undue influence.

### 3. *Degree of certainty of plaintiff's injury*

It is clear that Osornio sustained injury. Although Ellis intended under the 2001 Will that Osornio receive the entire estate, she will receive nothing if she is unable to rebut her presumptive disability under section 21350(a). Osornio's efforts to rebut the presumption have been unsuccessful. (See tentative decision *In re the Estate of Dora J. Ellis,* Monterey County Super. Ct. case Nos. MP 16152, MP16195, Aug. 29, 2003.) Assuming these efforts are ultimately unsuccessful, Osornio will sustain the definite injury of being deprived of the estate she would have received, but for her disqualification.

### 4. *Closeness between defendant's conduct and plaintiff's injury*

We acknowledge that Weingarten's conduct as might be alleged in a proposed amended complaint does not have the same degree of closeness to

Osornio's injury found in many of the authorities, *ante*, finding a duty owed by the attorney to a nonclient. This is admittedly not a case—such as *Lucas*, *supra*, 56 Cal.2d 583, or *Heyer*, *supra*, 70 Cal.2d 223—where there are no possible intervening factors that might break the causal connection between the attorney's conduct and the nonclient's damage. Here, the facts may ultimately disclose that it would have been unlikely for a variety of reasons that Ellis would have obtained a certificate of independent review, even had Weingarten advised her of the importance of seeking counsel to obtain it.[28] Under at least one scenario, however, Osornio may be able to establish that, but for Weingarten's failure to advise Ellis and refer her to independent counsel to address Osornio's presumptive disqualification under section 21350(a), Osornio would not have been damaged.

As is evident, the closeness of Weingarten's conduct to the injury here is one resolvable only after the presentation of significant evidence. It suffices to say that we conclude here that the absence of an extreme closeness between conduct and injury, by itself, should not trump a finding of an attorney's duty to a nonclient in a case that otherwise—applying the remaining five factors—warrants it.

### 5. *Policy of preventing future harm*

The case before us is similar to other cases in which courts have imposed a duty of care upon attorneys where beneficiaries are deprived of intended transfers of property as a result of failed wills or trusts. (See *Heyer*, *supra*, 70 Cal.2d 223; *Lucas*, *supra*, 56 Cal.2d 583; *Bucquet*, *supra*, 57 Cal.App.3d 914.) Here, unlike the circumstances in *Ventura*, *supra*, 40 Cal.App.3d 897—where the bequest failed due to the testator's inaccurate description of the beneficiary—the transfer of the estate failed through no fault of Ellis. If testamentary beneficiaries who are presumptively disqualified under section 21350(a)—such as Osornio—are deprived of the right to bring suit against the attorney responsible for the failure of the intended bequest, no one would be able to bring such action. The policy of preventing harm would thus be impaired. (See *Lucas*, *supra*, 56 Cal.2d at p. 589.)

We conclude that this fifth factor supports Osornio's claim. The imposition of duty under the circumstances before us would thus promote public policy: it would encourage the competent practice of law by counsel representing

---

[28] Weingarten also asserts that Osornio "nowhere alleges that she retained (or paid) Mr. Weingarten to prepare the Independent Certification." This argument misses the mark, and, indeed, makes no sense because it is the *client*, not the beneficiary, who is required to retain independent counsel under section 21351(b).

testators, trustors, and other clients making donative transfers to persons presumptively disqualified under section 21350(a).

### 6. *Extent of burden on profession*

 Consistent with *Lucas*, an important factor we must consider in evaluating Weingarten's potential duty to Osornio under the facts before us is whether the extension of liability here would "impose an undue burden on the profession." (*Lucas, supra,* 56 Cal.2d at p. 589.) We conclude that the extension of liability here will not impose such an undue burden. In making this determination, we are mindful that it is the general rule that attorneys will not be held liable to nonclients for their negligence, and that "[e]xceptions have been recognized only rarely, and then only when the specific facts of the case showed that the beneficiaries who sought standing to sue the fiduciary's attorney were intended, third party beneficiaries of the contract to provide legal services. [Citations.]" (*Borissoff v. Taylor & Faust, supra,* 33 Cal.4th 523, 530.)

 An attorney "is expected . . . to possess knowledge of those plain and elementary principles of law which are commonly known by well informed attorneys, and to discover those additional rules of law which, although not commonly known, may readily be found by standard research techniques. [Citations.] . . . [E]ven with respect to an unsettled area of the law, we believe an attorney assumes an obligation to his client to undertake reasonable research in an effort to ascertain relevant legal principles and to make an informed decision as to a course of conduct based upon an intelligent assessment of the problem." (*Smith v. Lewis* (1975) 13 Cal.3d 349, 358–359 [118 Cal.Rptr. 621, 530 P.2d 589], disapproved on another ground in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851, fn. 14 [126 Cal.Rptr. 633, 544 P.2d 561].) Thus, the estate planning attorney owes a "duty to act with due care as to the interests of the intended beneficiary" (*Heyer, supra,* 70 Cal.2d 223, 229), which duty arises out of the agreement to provide legal services to the testator.

 As one practice guide has explained: "An attorney who undertakes to assist a client in transferring property is necessarily assuming a duty to assist the client in making the transfer in a manner that does not unduly expose the transfer to attack." (1 Cal. Estate Planning (Cont.Ed.Bar 2004) Property Transfer Obstacles, § 3.8, p. 106.) For instance, the Supreme Court in *Heyer* held that "[a] reasonably prudent attorney should appreciate the consequences of post-testamentary marriage, advise the testator of such consequences, and use good judgment to avoid them if the testator so desires." (*Heyer, supra,* 70 Cal.2d at p. 229.) Similarly, in *Bucquet,* the court held that the attorney responsible for drafting inter vivos trusts owed a duty

to the trust beneficiaries to take appropriate steps known to competent attorneys to avoid federal estate tax and state inheritance tax, where such tax avoidance would directly impact the amounts the beneficiaries would receive after the trustors' deaths. (*Bucquet, supra,* 57 Cal.App.3d at pp. 922–923; see also *Garcia, supra,* 129 Cal.App.3d 24 [attorney owed duty to intended beneficiaries to explain to testator statutory presumptions governing title to property and measures that might be taken to assure that property's true character was recognized upon testator's death].)

■ The existence of statutory limitations on donative transfers to certain classes of people is a matter known to competent estate planning practitioners. One practice guide devotes an entire chapter to a discussion of donees who are presumptively disqualified under section 21350(a). (See 1 Cal. Trust and Probate Litigation (Cont.Ed.Bar 2004) Statutorily Disqualified Donees and Trustees, §§ 6A.1–6A.40, pp. 145–175.) Other guides for California estate planning practitioners discuss donees who are presumptively disqualified under section 21350(a). (See, e.g., 1 Cal. Will Drafting (Cont.Ed.Bar 2002) Professional Responsibility § 1.35, pp. 28–30; 1 Cal. Estate Planning, *supra,* Property Transfer Obstacles, § 3.8, p. 106; 2 Ross, Cal. Practice Guide: Probate (The Rutter Group 2001) ¶¶ 16:517.15 to 16:517.28, pp. 16-149 to 16-153.) Indeed, the Legislature deemed the subject of such importance that, at the time it enacted section 21350 in 1993, the Assembly bill included a separate statute under the Business and Professions Code, making an attorney's violation of section 21350 "grounds for discipline, if the attorney knew or should have known of the facts leading to the violation." (Bus. & Prof. Code, § 6103.6.)

■ An attorney drafting instruments on behalf of the transferor-client—the dispositive provisions of which include a proposed transfer to a presumptively disqualified person under section 21350(a)—must "assist the client in making the transfer in a manner that does not unduly expose the transfer to attack." (1 Cal. Estate Planning, *supra,* § 3.8, p. 106.) We therefore hold that the attorney owes a duty of care: (1) to advise the client that, absent steps taken under section 21351(b), the subject transfer to the proposed transferee, if challenged, will have a significant likelihood of failing because of the proposed transferee's presumptive disqualification under section 21350(a); and (2) to recommend that the client seek independent counsel in an effort to obtain a certificate of independent review provided under section 21351(b). Consistent with the authorities discussed, *ante*—including *Lucas, Heyer, Garcia,* and *Bucquet*—this duty of care is owed to both the transferor-client and to the prospective transferee. In so holding, we conclude that this area of the law is *not* one—such as the *Lucas* court found to be the case with restraints on alienation and the rule against perpetuities—that is "a question of law on which reasonable doubt may be entertained by well-informed lawyers. [Citations.]" (*Lucas, supra,* 56 Cal.2d 583, 591.)

Further—as a matter related to the question of undue burden upon the profession—we find that the imposition of liability here would not result in the attorney becoming unduly preoccupied with the possibility of negligence claims from third parties who might have dealings with his or her clients. (See *Goodman, supra,* 18 Cal.3d 335, 344.) Under the facts presented here, at the time Ellis engaged Weingarten, he clearly knew of his client's desire that her care custodian, Osornio, be her sole beneficiary under the 2001 Will. This case does not present a situation where the attorney would be faced with conflicting loyalties in representing the client. (See, e.g., *St. Paul Title Co. v. Meier, supra,* 181 Cal.App.3d 948, 952 [attorney for purchaser owed no duty to incidental third party, escrow agent, because, inter alia, attorney's duty of loyalty to client should not be divided].) Thus, imposing liability here does not burden the attorney with concerns that " 'would prevent him from devoting his entire energies to his client's interests.' [Citation.]" (*Goodman, supra,* at p. 344.) To the contrary, imposing a duty upon attorneys preparing instruments containing donative transfers to presumptively disqualified persons under section 21350(a) would promote public policy: it would encourage attorneys to devote their best professional efforts on behalf of their clients to ensure that transfers of property to particular donees are free from avoidable challenge.

 Moreover, our holding does not suggest that an attorney must "draft litigation-proof legal documents." (*Ventura, supra,* 40 Cal.App.3d 897, 905.) We do not imply from our ruling here that a transferor's attorney guarantees the success of the client's intended transfer. (See *Lucas, supra,* 56 Cal.2d 583, 591 [absent express agreement, attorney is not "insurer of the soundness of his opinions or of the validity of an instrument that he is engaged to draft"].) Thus, there may be cases (including, possibly, the one before us) in which the attorney is ultimately held not liable for the failed transfer, despite the attorney's failure to advise the client concerning the potential impact of section 21350(a). For instance, the attorney might avoid liability if the intended beneficiary is unable to establish that the attorney's negligence was the cause of the failed transfer (e.g., because it was unlikely that the client could have obtained a certificate of independent review).

We thus conclude that imposition of duty upon an attorney toward third parties here "does not place an undue burden on the profession, particularly when taking into consideration that a contrary conclusion would cause an innocent beneficiary to bear the loss." (*Lucas, supra,* 56 Cal.2d at p. 589.)

C. *The* Radovich *and* Moore *decisions*

In arguing against a finding of duty under the narrow circumstances presented here, Weingarten relies primarily upon our decision in *Radovich,*

*supra*, 35 Cal. App.4th 946, and on *Moore*, *supra*, 109 Cal.App.4th 1287. Neither case supports Weingarten's position in support of affirmance of the judgment.

▮▮▮ In *Radovich*—a case factually distinguishable—we refused to extend an attorney's duty to a nonclient who was a mere *potential* beneficiary under an *unsigned* draft will. (*Radovich*, *supra*, 35 Cal.App.4th at pp. 965–966.) In that instance, there was no plain expression of the testator's intention to benefit the plaintiff: "Although a potential testator may also change his or her mind *after* a will is signed, we perceive significantly stronger support for an inference of commitment in a signature on testamentary documents than in a preliminary direction to prepare such documents for signature." (*Id.* at p. 964.) In contrast, here we have a clear expression of Ellis's intention that Osornio be her sole beneficiary under the signed 2001 Will.

Likewise, in *Radovich*, we expressed concern that the imposition of liability by an estate planning attorney to *potential* beneficiaries under *unsigned* estate planning documents "could improperly compromise an attorney's primary duty of undivided loyalty to his or her client." (*Radovich*, *supra*, 35 Cal.App.4th at p. 965.) Here, there is none of the ambiguity concerning the testator's donative intent as was presented in *Radovich*. Imposing liability in this instance would not compromise the attorney's duty of undivided loyalty to the testator. The attorney's duty here was to take appropriate action to carry out the testator's wishes—that were *expressed and formalized* in her signed will—that her intended beneficiary, Osornio, inherit her entire estate.

*Moore* also involved circumstances entirely distinct from those presented here. As noted, *ante*, the question in *Moore* was whether an attorney owed "a duty to beneficiaries under a will to evaluate and ascertain the testamentary capacity of a client seeking to amend the will or to make a new will and . . . to preserve evidence of that evaluation." (*Moore*, *supra*, 109 Cal.App.4th at p. 1290.) *Moore*, in essence, involved a challenge by beneficiaries to the last formalized expression of the client's testamentary intentions, and a claim of malpractice against the attorney for failing to investigate and document his own client's testamentary capacity. (*Ibid.*) Here, however, Osornio makes no such claim. Instead, she asserts that the 2001 Will *did* contain an accurate expression of Ellis's testamentary intentions, but the proposed transfer failed due to Weingarten's negligence in his representation of Ellis.

The *Moore* court rejected the beneficiaries' contention that the attorney owed them a duty to evaluate and document his client's testamentary intent, concluding that "[f]irst and foremost, we believe the duty of loyalty of the attorney to the client may be compromised by imposing a duty to beneficiaries in these circumstances." (*Moore*, *supra*, 109 Cal.App.4th at p. 1298.) It

reasoned that, unlike cases such as *Biakanja*, *Lucas*, or *Heyer*—where there was no potential for a conflict between the attorney's duty to the client and any duty owing to the beneficiaries—there would be a clear conflict in imposing a duty where the intent of the testator was later challenged by the beneficiaries. (*Id.* at p. 1299.)[29] Accordingly, the court held that imposing such liability "would place an intolerable burden upon attorneys." (*Ibid.*)

⬛ Here, as we have discussed, *ante*, the imposition of liability upon attorneys to advise their transferor-clients concerning the potential disqualifying effects of transfers to persons identified in section 21350(a) does not impose an undue burden on the legal profession. Further, such a finding of duty—unlike the circumstances in either *Moore* or *Radovich*—will not compromise the attorney's duty of undivided loyalty to the client-transferor. Moreover, unlike the duty theory rejected in *Moore*, our holding does not require the attorney to evaluate or document the capacity of his or her transferor-client. Instead, it imposes a duty upon the attorney to advise the client of section 21350(a)'s effect of potentially disqualifying the proposed donee, and to assist the client in attempting to eliminate those consequences to effectuate the client's donative intentions.

⬛ The *Moore* court cited section 51 of the Restatement Third of Law Governing Lawyers as a basis for its rejection of attorney liability. (*Moore*, *supra*, 109 Cal.App.4th at pp. 1301–1302.) The Restatement supports our conclusion in this case. It provides in part: "[A] lawyer owes a duty to use care . . . [¶] . . . [¶] (3) to a nonclient when and to the extent that: [¶] (a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient; [¶] (b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and [¶] (c) the absence of such a duty would make enforcement of those obligations to the client unlikely." (Rest.3d Law Governing Lawyers, § 51.) Plainly, each of these factors is satisfied here.

---

[29] The Second District, Division One, has recently rejected negligence claims of beneficiaries against estate planning attorneys in two recent cases; neither case is final at this time. (See *Boranian v. Clark* (2004) 123 Cal.App.4th 1012 [20 Cal.Rptr.3d 405]; *Featherson v. Farwell* (2004) 123 Cal.App.4th 1022 [20 Cal.Rptr.3d 412].) In each case, Justice Vogel, writing for the court, relied upon *Moore* in concluding that the imposition of duty would place the attorney in a position of having divided loyalties between his or her client, the testator, and the beneficiary. In our case, as we have discussed, imposing a duty upon the attorney here raises no such conflict issues; the interests of the testator, Ellis, in disposing of her estate to the person named in her duly executed will, Osornio, do not conflict with Osornio's interests as beneficiary.

Furthermore, the comment explaining subsection (3) of section 51 of the Restatement—a comment which was also quoted by the *Moore* court (*Moore, supra*, 109 Cal.App.4th at pp. 1301–1302)—similarly supports our holding: "When a lawyer knows . . . that a client intends a lawyer's services to benefit a third person who is not a client, allowing the nonclient to recover from the lawyer for negligence in performing those services may promote the lawyer's loyal and effective pursuit of the client's objectives. The nonclient, moreover, may be the only person likely to enforce the lawyer's duty to the client, for example because the client has died. [¶] A nonclient's claim under Subsection (3) is recognized only when doing so will both implement the client's intent and serve to fulfill the lawyer's obligations to the client without impairing performance of those obligations in the circumstances of the representation." (Rest.3d Law Governing Lawyers, § 51, com. f, p. 361.) Clearly, Osornio was the "third person" that Ellis intended to benefit through the services Weingarten performed. It is equally clear that finding the existence of a duty owed by Weingarten to nonclient Osornio under the circumstances presented here will promote the attorney's "effective pursuit of the client's objectives." (*Ibid.*) Moreover, were we to conclude otherwise here, no one would be left to enforce the testator's right to be effectively represented.

We thus disagree with Weingarten that "*Moore* is on all fours" with the case before us. We conclude that neither *Moore* nor our decision in *Radovich* is controlling here.

### D. *Conclusion*

We have balanced the factors that must be considered in evaluating the question of an attorney's potential liability to third parties. As a matter of public policy, we must conclude that Weingarten owed a duty of care to Osornio under the facts as may be alleged in an amended complaint. Because Osornio could have amended her pleading to state a cause of action for professional negligence, the trial court abused its discretion by failing to grant Osornio leave to amend when it sustained the demurrer.

## DISPOSITION

The judgment is reversed and, on remand, the trial court is directed to grant Osornio leave to file an amended complaint.

Premo, Acting P. J., and Bamattre-Manoukian, J., concurred.

A petition for a rehearing was denied December 16, 2004, and the opinion was modified to read as printed above.